Bill, as you agreed during our meeting yesterday, will you kindly requote us a price (MSF) for purchase of G5J/G1H? I believe you stated that current lead times were 4-6 weeks and we'd like to get the ball rolling again and regain our lost ground. We trust that the arrangements made will indeed be honored by Akrosil and we look forward to future purchases and a continuing relationship with Akrosil. Hope to hear from you soon and please contact Michael Annis with the future purchase price.

Sincerely,

Michael J. Stoll
Quality Operations
Ritrama Minneapolis

Charles J. HAYELAND, Plaintiff,

v.

E. Vernon JAQUES, et al., Defendants.

No. 92–C–1203.

United States District Court,
E.D. Wisconsin.

March 29, 1994.

Arthur Heitzer, Heitzer Law Office, Milwaukee, WI, for Charles Hayeland.

James R. Scott & Charles P. Stevens, Lindner & Marsack, Milwaukee, WI, for E. Vernon Jaques, William Morris, Robert Regal, Sigmund Molner, Milwaukee Faucets, Inc., Universal Rundle, Inc.

Frank A. Gumina, Wessels & Pautsch, Milwaukee, WI, Joseph E. Gumina, Gumina & Gumina, Brookfield, WI, for Barbara Dates.

Leroy Jones, Jones Law Office, Milwaukee, WI, for Matthew Stelley, The Milwaukee Courier.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on a motion by the defendant, Nortek, Inc., to dismiss the claims against it for lack of personal jurisdiction. For the following reasons, the motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Charles Hayeland ("Hayeland"), claims he was fired by the defendant, Milwaukee Faucets ("Faucets"), a division of Universal Rundle, Inc. ("Universal"), because of his age and his opposition to certain alleged discriminatory practices. Hayeland also claims he was defamed as a result of the circumstances surrounding his termination. He initially brought suit in Milwaukee County Circuit Court seeking damages for violation of the Age Discrimination in Employment Act ("ADEA"), the Wisconsin Fair Employment Act ("WFEA") and for defamation. Hayeland sued Faucets and its president, E. Vernon Jaques ("Jaques"), Universal and its president and vice-president, Robert Regal ("Regal") and William Morris ("Morris"), and Nortek, Inc. ("Nortek"), Universal's parent corporation, and its president, Sigmund Molnar ("Molnar"). Hayeland also sued Barbara Dates a/k/a Barbara Gobster ("Dates"), a former Faucets employee who made allegations to a local newspaper that Hayeland and Faucets had discriminated against her, and the Milwaukee Courier ("the Courier") and one of its reporters, Matthew Stelley ("Stelley"), who reported the allegations to the public. Based on the federal claims under the ADEA, Jaques and Faucets removed the action to federal court. Hayeland subsequently amended his complaint to include a Title VII cause of action and claims under 42 U.S.C. §§ 1981 & 1985.

Nortek moves to dismiss the claims against it for lack of personal jurisdiction. As stated earlier, Nortek is Universal's parent corporation and Faucets is a division within Universal's corporate structure. Nortek is incorporated under the laws of Delaware and maintains its principal place of business in Providence, Rhode Island. (Bready Aff. at ¶ 2.) Nortek is a holding company employing approximately 40 people and conducting no manufacturing operations itself; all such operations are conducted by wholly-owned, separately incorporated subsidiaries. (Id. at ¶ 3.) Nortek does not maintain or own an office, plant or real property in Wisconsin. (Id. at ¶¶ 4–5.) It has no employees here and has never been qualified to do business here. (Id. at ¶¶ 6–7.)

Nortek purchased Universal from Sears, Roebuck & Co. in 1986. (Id. at ¶ 8.) Nortek maintains that all of the corporate formalities and structures have been observed between it and its subsidiaries. (Id. at ¶ 14.) Nortek also claims that none of its employees control or supervise the day-to-day operations of Universal. (Id. at ¶¶ 9–11.) More importantly, Nortek alleges that none of its employees had any involvement in the decision to terminate Hayeland. (Id. at ¶ 12.) Hayeland, however, claims that Nortek employees had significant involvement and control over Universal's operations. Hayeland claims that Universal department heads and executives would regularly attend quarterly meetings in Wisconsin with Nortek executives who "would provide direction and input into the manner in which we performed our jobs." (Hayeland Aff. at ¶ 2.) Hayeland received direction from Nortek executives regarding personnel issues, staffing levels and employee safety programs. (Id. at ¶ 3.) After the publication of Dates and Stelley's article in the Courier, Hayeland met with Molnar, a Nortek representative, to discuss the article and a related EEOC charge. (Id. at ¶ 4.) Molnar allegedly gave Hayeland express directions on how to respond to both. (Id.) Approximately one week later Hayeland was fired, although he was asked to stay on another week to carry out Molnar's instructions regarding Dates' allegations. (Id. at ¶¶ 4–5.)

## LEGAL ANALYSIS

### I. MINIMUM CONTACTS

■ Generally, there is a two-pronged inquiry on issues of personal jurisdiction. Jurisdiction must be authorized under Wisconsin's long-arm statute and must not offend the due process clause of the U.S. Constitution. *Brunswick Corp. v. Suzuki Motor Co.*, 575 F.Supp. 1412, 1416 (E.D.Wis.1983). Long-arm jurisdiction is determined with reference to the relevant state statutory provisions, and federal due process usually requires certain "minimum contacts" between the defendant and the forum state such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice". *Shaffer v. Heitner*, 433 U.S. 186, 202, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683

(1977), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The due process question changes, however, when—as here—it arises in a federal court and jurisdiction is based solely on the presence of a federal question. "When a federally created right is at issue, ... the due process clause of the Fifth Amendment rather than that of the Fourteenth Amendment is the focus of analysis." *Brunswick*, 575 F.Supp. at 1416, n. 2. This raises an interesting but disputed question: Must the "minimum contacts" necessary under the Fifth Amendment be contacts with the forum state as required under Fourteenth Amendment due process analysis, or may they be contacts with the United States generally. The question is important because, while Nortek has extensive (perhaps exclusive) contacts with the United States, its only significant contact with Wisconsin is the fact that one of its wholly-owned subsidiaries does business here.

■ The 7th Circuit adopts a "national contacts" approach to jurisdiction in only a limited number of cases. Generally, the 7th Circuit acknowledges that "[w]hen a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States." *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir.1991). The Court rejects, however, the notion that "a federal common law of personal jurisdiction" should (or can) replace the requirements of state long-arm statutes in federal question cases. *Id.*, at 534–35. According to the 7th Circuit, personal jurisdiction can only be created by a federal or state statute. *Id.* Thus, the "national contacts" approach to jurisdiction is currently limited to situations where the federal statute supplying the basis for subject matter jurisdiction also provides its own means of obtaining personal jurisdiction. *Id.*, at 534–35. None of the federal statutes involved here provide their own means of service. Thus, service and jurisdiction must be analyzed under Fed.R.Civ.P. 4(e), which allows for service "under the circumstances" provided in the long-arm statute of the forum state. Because jurisdiction must be obtained via

Wisconsin's long-arm statute, it seems logical to consider Nortek's contacts with Wisconsin for due process purposes.

 But the 7th Circuit draws a distinction in this regard—or at least is poised to do so—between diversity cases and federal question cases. In diversity cases, where federal courts must decide questions of state law, whatever infirmities that would exist in a state court regarding personal jurisdiction carry over to federal court, and the federal court must decide the jurisdictional issue as if the case was in state court. This requires a "minimum contacts" test that evaluates defendant's contacts with the forum:

> Wisconsin could not use this law, in its own courts, to exercise jurisdiction over [defendant], because [defendant] lacks "contacts" with Wisconsin. The shortcoming of a state statute of this kind carries over into diversity litigation in federal court because under *Erie* . . . , a federal court acts as the state's agent in applying state law. The authority for the demands made on the defendant is state rather than national power. . . . State-federal jurisdictional allocations would be thrown out of kilter if a federal court could give judgment in a diversity case that the state itself would have to dismiss.

*United Rope,* 930 F.2d at 535. The foregoing rational does not necessarily carry over to federal question cases although, as the 7th Circuit explains, the majority view is that it does. Referring to the "under the circumstances" language contained in Rule 4(e), "[f]ive courts of appeals believe that these words require lockstep treatment of personal jurisdiction in state courts under state law and federal courts under federal law, so that when assessing the constitutionality of an assertion of personal jurisdiction the federal court must pretend that it is a state court

even when the issue arises under federal law." *Id.* The Sixth Circuit, however, reaches a contrary conclusion, finding that Fifth Amendment due process in federal question cases is concerned with a defendant's "national contacts" and not his contacts with the forum. *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1269 (6th Cir.1984). The minority view is based on the fact that the defendant in federal question cases is compelled to appear by a *national* sovereign, even though service is accomplished by means of a state long-arm statute, and the litigation involves the defendant's rights and responsibilities under *federal* law:

> When a court asserts personal jurisdiction over a foreign defendant on the basis of a state law claim, it must ensure that the forum state does not unduly encroach on a sister state's interests. When a court, state or federal, adjudicates a federal claim, the federalism issue is of no relevance, for the court determines the parties' rights and liabilities under uniform, national law. No state intrudes on another's interests. The only relevant interest is the national one. Thus, the applicable constitutional due process provision should not be the fourteenth amendment, but the fifth amendment.

*Id.,* quoting with approval *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 292 (3rd Cir.1981) (Gibbons, J., dissenting).

 Without deciding the issue [1], Judge Easterbrook stated that the 7th Circuit, consistent with the majority of legal commentators, favors the Sixth Circuit's minority view:

> Our sympathies lie with the minority view. "[U]nder the circumstances" is a slim thread on which to hang a conclusion that federal courts exercising national powers should pretend that they are state courts

---

1. Judge Easterbrook declined to decide the issue because the plaintiff did not raise it in the district court or on appeal. The plaintiff simply asked the Court to adopt a "federal common law of personal jurisdiction" for federal question cases which, as referenced earlier, the Court decided it could not do. *United Rope,* 930 F.2d at 534–36. Similarly, Hayeland makes only a general appeal for a "national contacts" approach and fails to address the specific point raised in *United Rope.* But Nortek's brief discusses *United Rope* and the

differing interpretations of Rule 4(e) discussed therein. As such, the issue is properly before the Court. Judge Easterbrook's main concern with deciding an issue not raised by the plaintiff was the fact that the defendant had not had an opportunity to respond. *United Rope,* 930 F.2d at 536. Here, Nortek was aware of the issue and discussed it in its brief. That discussion, along with the cases and discussion contained in *United Rope,* is all the Court needs to fully consider and decide the issue.

exercising state powers. The language was added to rule 4(e) in 1963, and the Advisory Committee's notes do not discuss this subject. The language more naturally refers to the "circumstances" identified in the state statutes. Federal courts acquire personal jurisdiction only to the extent the state law authorizes service of process. When the state law authorizes this service . . . the federal court has jurisdiction unless the Constitution bars the door. Whether it does depends on all of the circumstances of the case—not only the defendant's activities, but also the fact that the court is exercising national power. *It is more anomalous to dismiss on "constitutional" grounds a suit that is within the constitutional power of the national judiciary than it is to say that a long-arm statute is unconstitutional as applied in state court but valid as applied in federal court.*

*United Rope,* 930 F.2d at 536. (Emphasis supplied.) The Court agrees with this conclusion. When exercising the power of the national sovereign, logic suggests that a federal court is not limited by the same constitutional concerns that limit the power of a state sovereign. Of course, a forum state's long-arm statute must still be satisfied. That is the primary means by which a federal court acquires jurisdiction over a defendant. But once the requirements of the long-arm statute are met, the only due process concern should be whether the defendant has sufficient national contacts such that the exercise of jurisdiction by the nation's courts under the nation's laws does not offend traditional notions of fair play and substantial justice.[2] Here, it is clear that Nortek has extensive contacts with the United States. The only remaining question is whether jurisdiction is satisfied under Wisconsin's long-arm statute.

## II. LONG–ARM JURISDICTION

■ Hayeland argues that long-arm jurisdiction is found under Wis.Stats. § 801.-05(1)(d), which is commonly referred to as the "doing business" provision of the statute:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

(1) Local presence or status. In any action whether arising within or without this state, against a defendant who when the action is commenced:

\* \* \* \* \* \*

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

Wis.Stat. § 801.05(1)(d). In *Brunswick,* another branch of this Court interpreting this provision held that the parent-subsidiary relationship is sufficient to confer jurisdiction, for long-arm purposes, so long as the subsidiary carries on sufficient activities in Wisconsin:

MELCO and Hitachi contend that even if the Wisconsin activities of their subsidiaries are deemed relevant to jurisdiction over them as parents, the contacts with the forum are not sufficient under section 801.-05(1)(d). The Court holds, on the contrary, that the totality of the parents' contacts with Wisconsin satisfies the requirements of the state long-arm statute. *Although the mere fact of a parent-subsidiary relationship alone will not support jurisdiction over the non-resident parent, that contact with the forum in conjunction with substantial and systematic activities of the subsidiary in the forum state will suffice.*

*Brunswick,* 575 F.Supp. at 1421. (Emphasis supplied.) Here, there is no dispute that Universal, through Faucets (which is not a separate entity, but simply a division within Universal), carries on "substantial and systematic activities" in Wisconsin. These activities, in conjunction with the parent-subsidiary relationship, satisfy long-arm jurisdiction over Nortek.

**2.** This does not mean that federal defendants are going to be constantly dragged into court in faraway places where they have little or no contacts. The pertinent long-arm statute must still be satisfied and the defendant may still object on grounds of improper venue and forum non conveniens.

NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

Nortek's motion to dismiss for lack of personal jurisdiction is denied.