**KOHLER CO., Plaintiff,**

v.

**TITON INDUSTRIES, INC., Defendant.**

No. 96–C–875.

United States District Court, E.D. Wisconsin.

Dec. 19, 1996.

Albert L. Underhill, J. Derek Vandenburgh, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN, James R. Kieckhefer, Kohler Co., Kohler, WI, for Plaintiff.

Mary C. Flanner–Strack, Robert D. Scott, Whyte, Hirschboeck, Dudek S.C., Milwaukee, WI (Jerry B. Blackstock, William M. Ragland, Jr., Christen, Civiletto, Carey, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, of counsel), for Defendant.

## DECISION AND ORDER

STADTMUELLER, Chief Judge.

On May 19, 1995, Kohler Company (Kohler) filed suit in this district against Titon Industries, Inc. (Titon), alleging unfair competition, trademark infringement, and trade dress infringement under both state and federal law. On July 17, 1996, Judge Randa dismissed the action for lack of personal jurisdiction, finding that Titon's contacts with Wisconsin were insufficient to satisfy due process under the Fourteenth Amendment. *Kohler Co. v. Titon Indus., Inc.*, No. 95–C–548, 1996 WL 780509 (E.D.Wis. July 17, 1996). On August 6, 1996, Kohler filed this action against Titon, setting forth essentially the same allegations, but invoking only federal law for its claims against Titon. Currently before the court is Titon's motion to dismiss for lack of personal jurisdiction.

The facts of this case are recited in Judge Randa's July 17 order, and I will repeat them here only as necessary. Kohler is a Wisconsin corporation which manufactures and sells bathroom and kitchen plumbing fixtures. Titon, a competitor of Kohler's, is a Georgia corporation. At issue is Titon's "Euro Flush–Lite" line of toilets, which Kohler claims infringes upon its "Wellworth Lite" and "Wellworth Eco Lite" toilets.

The case before Judge Randa involved state law claims, thus invoking the court's diversity jurisdiction. Accordingly, Judge Randa analyzed Titon's motion to dismiss for lack of personal jurisdiction under Wisconsin's long-arm statute, Wis.Stat. § 801.05, and the Due Process Clause of the Fourteenth Amendment. Although Judge Randa found that the requirements of Wisconsin's long-arm statute were met, he determined that Titon did not have sufficient minimum contacts with Wisconsin to satisfy due process:

> Based on the holdings of *Perkins* [v. *Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)] and *Helicopteros* [*Nacionales de Colombia,*

*S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ], Titon's contacts with the State of Wisconsin are insufficient to confer general jurisdiction. Titon is not registered to do business in Wisconsin, nor does it have any employees or distributors working or located in Wisconsin. The record suggests that Titon made two F.O.B. warehouse sales of products unrelated to this suit to Wisconsin-based companies in 1992; these sales accounted for 0.046% of Titon's total sales for that year. In addition, in March and June or July of 1995, Titon made F.O.B. warehouse sales of the Euro Flush–Lite to Builders Square outside of Wisconsin, and Builders Square subsequently had those products shipped to its stores in Wisconsin. Titon advertises in national trade journals and magazines that circulate in Wisconsin, but has not specifically targeted Wisconsin customers in its advertisements. While Titon maintains independent, nonexclusive sales representatives who include Wisconsin in their multi-state territory, those representatives have been largely inactive in the State of Wisconsin. Finally, Titon instituted a collection action in Wisconsin courts against a Wisconsin-based customer five years before Kohler filed the present suit because Titon was unable to secure personal jurisdiction over the customer in Georgia. Such activities do not suggest the type of continuous and systematic presence contemplated in *Perkins.* Rather than being regular and substantial, Titon's contacts with Wisconsin are best described as variable and sparse.

. . . .

Kohler contends that, under the specific jurisdictional analysis set forth in *Burger King* [*Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ], the shipment of Euro Flush–Lite toilets into Wisconsin supports the exercise of jurisdiction over Titon. However, Kohler erroneously asserts that Titon shipped these products directly to Wisconsin. This contention is not supported by the record, which characterizes the sales to Builders Square as F.O.B. warehouse. As F.O.B. warehouse sales, Builders Square took title of the Euro Flush–Lite toilets outside of Wisconsin and unilaterally decided to send them to Wisconsin. Thus, it cannot be said that Titon purposely availed itself to the privilege of selling the Euro Flush–Lite in Wisconsin. The presence of the Euro Flush–Lite in Wisconsin did not "proximately result" from actions taken by Titon which created a "substantial connection" with the State. Instead, Titon's two specific contacts with the State resulted from the unilateral activity of a third party, Builders Square. Under *Burger King,* Titon's connections with Wisconsin are insufficient to warrant the exercise of specific jurisdiction, and thus the Court finds that jurisdiction over Titon fails to comport with due process.

*Kohler,* No. 95–C–548, slip op. at 10–12 (footnotes and citations omitted).

To avoid the requirements of due process under the Fourteenth Amendment, Kohler refiled suit alleging only federal claims. Titon quickly filed a motion to dismiss for lack of personal jurisdiction based on Judge Randa's analysis. Because the case before this court invokes the court's federal question jurisdiction rather than diversity jurisdiction, Kohler argues, the proper analysis for personal jurisdiction is the "national contacts" test under the Fifth Amendment. Thus, the question before me is which due process analysis to apply to the facts of this case.

Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Where the case arises under a federal statute which does not authorize service of process, the court must look to the law of the state in which it sits to determine whether jurisdiction may be asserted over an out-of-state defendant. *Omni,* 484 U.S. at 108, 108 S.Ct. at 411–12; Fed. R.Civ.P. 4(e).

■ Here, Kohler brings its claims under the Lanham Act, which contains no provision for service of summons. Therefore, I am obliged to look to the law of Wisconsin in determining whether this court may assert

jurisdiction over Titon. The parties agree on this much, and as Judge Randa found, the facial requirements of Wisconsin's long-arm statute are satisfied by the facts of this case. Amenability to extra-territorial personal jurisdiction, whether under state or federal law, however, ultimately is a question of due process. *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425 (N.D.Ind.1994). And herein lies the wrinkle: is the reach of Wisconsin's long-arm statute in a federal question case limited by the Fourteenth Amendment's "minimum contacts" test, or by a "national contacts" test under the Fifth Amendment?

■ In a diversity case, the answer is clear. A federal court sitting in diversity acts as the state's agent in applying state law. *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535 (7th Cir.1991). "Federal courts accordingly absorb the 'whole law' of the states, including limitations on personal jurisdiction...." *United Rope*, 930 F.2d at 535 (citation omitted). Thus, because a state court's jurisdiction would be limited by the Due Process Clause of the Fourteenth Amendment, the jurisdiction of a federal court sitting in diversity likewise is limited by the Fourteenth Amendment.

■ But what of a federal action raising only federal claims? In the absence of a federal statute authorizing service of process, Rule 4(e) directs that service "may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located." Kohler argues that after the state long-arm statute is satisfied, only the defendant's contacts with the United States are relevant to the court's due process analysis. Although a state law claim should require minimum contacts with the forum state to comply with due process, Kohler argues, a federal claim requires contacts only with the federal forum— i.e., the United States. Titon, on the other hand, contends that "pursuant to the law of the state" means that the same due process limitations—i.e., minimum contacts with the forum state—apply to a federal court, whether addressing state or federal claims.

This court is not the first to grapple with this rather tricky issue. Indeed, the Seventh Circuit expressed its opinion (albeit in dicta) in *United Rope*. There, the court reasoned that when a federal court addresses a federal claim, it is implementing national policy, and thus minimum contacts with the United States, rather than with the forum state, are necessary to satisfy due process. *United Rope*, 930 F.2d at 536. In so reasoning, the court recognized that it was siding with the "minority view," notably the Sixth Circuit's decision in *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265 (6th Cir.1984), and explicitly declined to transform its analysis in dicta into law, as the issue was not squarely before it. *United Rope*, 930 F.2d at 536.

In this district, Judge Randa addressed the issue in *Hayeland v. Jaques*, 847 F.Supp. 630 (E.D.Wis.1994), and adopted the Seventh Circuit's reasoning:

> When exercising the power of the national sovereign, logic suggests that a federal court is not limited by the same constitutional concerns that limit the power of a state sovereign. Of course, a forum state's long-arm statute must still be satisfied. That is the primary means by which a federal court acquires jurisdiction over a defendant. But once the requirements of the long-arm statute are met, the only due process concern should be whether the defendant has sufficient national contacts such that the exercise of jurisdiction by the nation's court under the nation's laws does not offend traditional notions of fair play and substantial justice.

*Hayeland*, 847 F.Supp. at 634; *see also Harley–Davidson, Inc. v. Columbia Tristar Home Video, Inc.*, 851 F.Supp. 1265, 1269 (E.D.Wis.1994) (citing *Hayeland*, *United Rope*, and *Handley* for the proposition that in a federal question case, personal jurisdiction must comply with Wisconsin's long-arm statute and the Fifth Amendment's Due Process Clause).

Two important considerations are missing from the courts' analyses in *United Rope* and *Hayeland*, however: the Supreme Court's decision in *Omni*, and the 1993 amendments to Rule 4.

In *Omni,* although the Court declined to consider the constitutional issues raised by a "national contacts" test in this context, 484 U.S. at 102 n. 5, 108 S.Ct. at 409 n. 5, it implicitly rejected such an approach. *Omni* involved the Commodity and Exchange Act (CEA) and two nonresident defendants, a British corporation and a resident and citizen of the United Kingdom. The district court, sitting in Louisiana, determined that the requirements of Louisiana's long-arm statute were not met, and thus dismissed the claims against the non-resident defendants.

The Supreme Court first found that Congress did not implicitly authorize national service of process in a private cause of action under the CEA. The Court then upheld the district court's finding that the requirements of Louisiana's long-arm statute were not met and held that service accordingly was not authorized under Rule 4. Finally, the Court declined to create a federal common-law rule authorizing service of process in federal question cases in which the federal statute did not provide for nation-wide service:

"[T]he weight of authority, both in the cases and in the commentary," considers statutory authorization necessary to a federal court's service of summons.

The strength of this longstanding assumption, and the network of statutory enactments and judicial decisions tied to it, argue strongly against devising common-law service of process for at least two reasons. First, since Congress concededly has the power to limit service of process, circumspection is called for in going beyond what Congress has authorized. Second, as statutes and rules have always provided the measures for service, courts are inappropriate forums for deciding whether to extend them. Legislative rule-making better ensures proper consideration of a service rule's ramifications within the pre-existing structure and is more likely to lead to consistent application.

. . . .

. . . . A narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute, might

well serve the ends of the CEA and other federal statutes. It is not for the federal courts, however, to create such a rule as a matter of common law. That responsibility, in our view, better rests with those who propose the Federal Rules of Civil Procedure and with Congress.

484 U.S. at 109–11, 108 S.Ct. at 412–13 (footnotes and citations omitted) (quoting *Point Landing, Inc. v. Omni Capital Int'l, Ltd.,* 795 F.2d 415, 433 (5th Cir.1986) (en banc)). Thus, the Court, fully aware of the anomaly of state law limiting a federal court's jurisdiction in a federal question case, adhered to Rule 4 and declined to create federal law circumventing the state statute's limits.

Rule 4 was amended in 1993 in part in response to *Omni* and the circuit split created by *Handley* and other cases:

[T]he revised rule extends the reach of federal courts to impose jurisdiction over the person of all defendant [sic] against whom federal claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States. *The present territorial limits on the effectiveness of service to subject a defendant to the jurisdiction of the court over the defendant's person are retained for all actions in which there is a state in which personal jurisdiction can be asserted consistently with state law and the Fourteenth Amendment.* A new provision enables district courts to exercise jurisdiction, if permissible under the Constitution and not precluded by statute, when a federal claim is made against a defendant not subject to the jurisdiction of any single state.

Fed.R.Civ.P. 4 advisory committee's notes to 1993 amendments (emphasis added). That new provision, paragraph (k)(2), remedied the situation in which a federal court lacked jurisdiction over a nonresident of the United States under state long-arm statutes. Rule 4(k)(2) was enacted to

correct[ ] a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United

States law and to satisfy the federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation *or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction.* In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in *Omni.*

> *There remain constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States. These restrictions arise from the Fifth Amendment rather than from the Fourteenth Amendment,* which limits state-court reach and which was incorporated into federal practice by the reference to state law in the text of the former subdivision (e) that is deleted by this revision. . . .

Fed.R.Civ.P. 4 advisory committee's notes to 1993 amendments (emphasis added).

As is clear from the quoted portions of the Advisory Committee's notes, the intention of the amended rule is that the "national contacts" test be applied in federal question cases involving defendants which are not United States residents. As is also clear, the Fourteenth Amendment's test requiring contacts with the forum state was intended to be incorporated into federal courts' application of state long-arm statutes, whether in diversity or federal question cases, when the defendant is a resident of the United States. The court in *L.H. Carbide* employed a similar analysis of the 1993 amendments to Rule 4 in reaching the same conclusion:

> Therefore, implicit in the newly amended Rule, is the notion that a federal district court is still to look to the long-arm statute of the state in which it sits, pursuant to Rule 4, in order to assert personal jurisdiction over a non-resident defendant in cases that arise under federal law, i.e., nondiversity cases, where Congress has not enacted a personal jurisdiction statute specifically for the federally created cause of action. Because the federal district court is to look to the state's long-arm statute for authority to exercise personal jurisdiction, the exercise of personal jurisdiction under the state's statute must comport with the due process clause of the Fourteenth Amendment which necessarily includes the limitations dictated by that Amendment that "ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."

*L.H. Carbide,* 852 F.Supp. at 1431 (quoting *Handley,* 732 F.2d at 1271 (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980))). The commentators likewise have noted the language of the Advisory Committee's notes to the 1993 amendments to Rule 4. See 2 James Wm. Moore et al., Moore's Federal Practice ¶ 4,16[1] (2d ed. 1996); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1124 (Supp.1996).

 Mindful of the *Omni* Court's caution against judicial extension of service (and, it follows, jurisdiction) as well as the clear intent expressed in the Advisory Committee's notes, I am loathe to create jurisdiction where Congress and those who propose the Federal Rules of Civil Procedure appear not to have intended it. Thus, I believe that the most sensible reading of the case law and rule is as follows. The general rule is that when a federal court's jurisdiction is limited by the state's long-arm statute, it similarly is limited by due process considerations relating to the defendant's contacts with the forum state. This follows logically because state long-arm statutes are themselves limited by the Fourteenth Amendment. An exception has been made when the defendant is not a resident of the United States and does not have sufficient contacts with any one state to meet the state long-arm statute or to comply with the Fourteenth Amendment's test. In that case, due process is measured by the nonresident defendant's contacts with the United States, rather than with the forum state, under a national contacts test. And, of course, the national contacts test is applied when a federal statute provides for national or worldwide service.

In the instant case, then, where the relevant federal statute does not provide for service of process, the court's jurisdiction is limited under Rule 4 by Wisconsin's long-arm statute, which is itself limited by the Due Process Clause of the Fourteenth Amendment. Accordingly, I must determine whether Titon has sufficient minimum contacts with Wisconsin, rather than with the United States, in order to establish jurisdiction under Wisconsin's long-arm statute. Judge Randa's analysis in the previous case, quoted above, answers that query in the negative. I will adopt Judge Randa's reasoning in determining that Titon does not have sufficient contacts with Wisconsin to comport with due process and thus fails to establish personal jurisdiction under Wisconsin's long-arm statute.

Accordingly,

**IT IS ORDERED** that the motion to dismiss for lack of personal jurisdiction, filed by the defendant, be and the same is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** without prejudice.

The clerk is directed to enter judgment accordingly.