**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., Plaintiffs,**

v.

**McD METALS, INC., Defendant.**

C.A. No. 96–1572–A.

United States District Court, E.D. Virginia, Alexandria Division.

May 15, 1997.

Brian D. Black, Seth B. Popkin, Edward J. O'Connell, Kristein M. Finney, Office of the General Counsel, Alexandria, VA, for Plaintiffs.

Neal D. Mollen, Zachary D. Fasman, Erin M. Sweeney, Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, Mark D. Lansing, Helm, Shapiro, Anito & McCale, P.C., Albany, NY, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This suit presents the question whether personal jurisdiction over a defendant in an

ERISA[1] action should be determined on the basis of:

(i) defendant's "national" contacts with the United States as a whole pursuant to the Due Process Clause of the Fifth Amendment; or

(ii) defendant's "minimum" contacts with the forum state pursuant to the Due Process Clause of the Fourteenth Amendment.

Defendant here challenges personal jurisdiction on the ground that it has no contacts with Virginia. For the reasons that follow, this challenge fails: "minimum" contacts with Virginia is not the standard, as personal jurisdiction under ERISA is measured by reference to the Fifth Amendment, not the Fourteenth Amendment.

## I

Defendant, McD Metals, Inc. ("McD"), a New York corporation headquartered in Schenectady, is a specialty steel construction firm that designs and installs heating and air conditioning systems for new and renovated commercial buildings. McD's offices and business records are located in upstate New York and all of its employees reside in the Albany–Schenectady region. McD has not designed or installed a heating or air conditioning system outside New York or Massachusetts. McD has never conducted business in Virginia and, except for mailing pension contributions to plaintiffs under pre-existing collective bargaining agreements, it has no contacts with the state.

Plaintiffs, the Board of Trustees for the Sheet Metal Workers' Pension Fund ("Trustees"), manage the pension benefit plan for the members of the Sheet Metal Workers' International Association. The Trustees, who are fiduciaries of the pension fund pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), oversee the union's fund from their office in Alexandria, Virginia.

In June 1982, shortly after incorporating, McD entered into a series of collective bargaining agreements with Local Union No. 83

of the Sheet Metal Workers' Union ("Local 83"). Although the record does not indicate the precise number of McD's unionized employees, McD employs numerous members of Local 83. Pursuant to the terms and conditions of the collective bargaining agreements, McD obligated itself to submit monthly payments to the pension fund on behalf of its unionized employees and to provide monthly remittance reports itemizing the hours worked and wages earned by them.

The collective bargaining agreements did not explicitly cover James W. McDonald, McD's sole owner and president, even though he is a card-carrying union member. Nevertheless, McDonald wished to participate in the pension fund along with McD's unionized employees. To that end, McDonald contacted James McCabe, the Local 83's business manager, who advised him to execute a so-called "special class" agreement, which permits the Trustees to accept pension fund contributions for employees not represented under a collective bargaining accord. Thus, on December 20, 1982, McDonald, on behalf of McD, executed a special class agreement, entitled "The Sheet Metal Workers National Pension Fund Standard Form of Participation Agreement for Employers that Have Agreed to Contribute on Behalf of their Non-bargaining Unit Employers." Thereafter, McD submitted payments on McDonald's behalf to the pension fund.

In December 1990, the Trustees, by letter and telephone, advised McD that the special class agreement obligated it to contribute to the pension fund on behalf of all non-bargaining unit employees, not just McDonald. In response, McDonald contacted John Herrewyn, the Local 83's president, seeking a clarification of the Trustees' interpretation of the special class agreement. Herrewyn, in turn, sent a letter to the Trustees requesting information concerning McD's options in light of their expansive construction of the agreement. The Trustees did not respond to Herrewyn's inquiry. As a consequence, McD continued to submit pension payments solely

---

1. Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.*

on behalf of McDonald and McD's unionized employees.

In May 1995, the Trustees terminated the special class agreement. Then, on October 31, 1996, the Trustees filed this action, seeking an award of McD's purportedly delinquent pension fund contributions, interest, and liquidated damages. Specifically, the Trustees allege that McD failed to tender payments to the pension fund for all of its nonbargaining unit employees and to provide complete remittance reports. Further, the Trustees seek an audit of McD's wage, payroll, and personnel records for the purpose of establishing the precise measure of unpaid benefits.

On March 21, 1997, McD filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P. The Court heard oral argument and denied the motion.[2] *Board of Trustees, Sheet Metal Workers' National Pension Fund v. McD Metals, Inc.,* C.A. No. 96–1572–A (Order, April 21, 1997). This Memorandum Opinion elaborates on the Court's bench ruling.

## II

■ McD contends that its contacts with the Commonwealth of Virginia are insufficient to comport either with Virginia's long–arm statute, Virginia Code § 8.01–328.1, or the Fourteenth Amendment's due process requirements. The Trustees counter that McD applies the wrong standard. Specifically, the Trustees contend that because they sued McD under ERISA, a federal statute which authorizes nationwide service of process, Virginia's long-arm statute and the Fourteenth Amendment are wholly inapposite and that it is the Fifth Amendment that applies and permits personal jurisdiction on the basis of McD's "national" contacts. Settled authority supports the Board's contention.

■ When personal jurisdiction is properly challenged by motion under Rule 12(b)(2), Fed.R.Civ.P., a plaintiff bears the burden "to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993). Yet, where, as here, such a motion is decided without an evidentiary hearing, "plaintiff need prove only a prima facie case of personal jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). And, in deciding whether a plaintiff has proven a prima facie case, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.; Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904, 908 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985).

■ To exercise personal jurisdiction over a non-resident defendant in a federal question case, a federal court must: (i) initially establish whether defendant is amenable to service of summons under an applicable statute or rule; and (ii) then determine if that service comports with the Fifth Amendment due process principles.[3] In other words, personal jurisdiction analysis in federal question cases calls for a two step inquiry. The first step is to determine whether a defendant is amendable to service under Rule 4(e), Fed. R.Civ.P. The second step requires a determination whether the exercise of personal jurisdiction in the circumstances is consistent with the Due Process Clause of the Fifth Amendment.

■ Several subsidiary principles guide a federal court in this two step process. With respect to the first step, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Rule 4, Fed.R.Civ.P., governs the service of summons in the federal courts. *United Elec., Radio and Mach. Workers of Amer. v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992). Unless otherwise provided by

---

**2.** In the alternative, McD also moved to transfer venue to the U.S. District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a). The Court denied that motion from the bench. *Board of Trustees, Sheet Metal Workers' National Pension Fund v. McD Metals, Inc.,* C.A. No. 96–1572–A (Order, April 21, 1997). This Memorandum Opinion does not address that particular ruling.

**3.** *See e.g., Go–Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406, 1413 (9th Cir.1989).

an applicable federal statute, a federal court must adhere to the methods prescribed by a rule of the state where it sits to determine whether a defendant is amenable to service of process. *See* Rule 4(e), Fed.R.Civ.P.[4] Thus, for service of process, Rule 4 requires that a federal court must look first to any applicable federal law providing for service of process and, in the absence of such a law, to the long-arm statute of the state in which the court sits. *Omni Capital,* 484 U.S. at 105, 108 S.Ct. at 410.[5]

■ With respect to the second, constitutional step, it is the Fifth Amendment, not the Fourteenth Amendment, that controls due process analysis in non-diversity, or federal question, cases.[6] Generally, the due process inquiry under the Fifth Amendment is broader than that under the parallel clause of the Fourteenth Amendment. Thus, whereas the Fourteenth Amendment dictates that a defendant have sufficient "minimum" contacts with a particular forum state,[7] the Fifth Amendment requires only that a defendant have sufficient aggregate contacts with the United States as whole. This latter approach, colloquially referred to as the "national" contacts test,[8] makes sense given the differing purposes served by the respective due process clauses of the Fifth and Fourteenth Amendments. The Fourteenth Amendment addresses state sovereignty and

**4.** Rule 4(e) provides, in pertinent part, that:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of summons upon the defendant in an action brought in the courts of general jurisdiction of the State....

**5.** This civil rule also applies to service on corporations. Rule 4(h), Fed.R.Civ.P. Rule 4(h) allows service of summons:

in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive such service of process....

Because McD is a corporation, the Trustees served McD, via the New York Secretary of State, in accordance with Rule 4(h), Fed.R.Civ.P.

**6.** *See United Elec.,* 960 F.2d at 1085 ("When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment."); *Hayeland v. Jaques,* 847 F.Supp. 630, 632 (E.D.Wis.1994) (" 'When a federally created right is at issue, ... the due process clause of the Fifth Amendment rather than that of the Fourteenth Amendment is the focus of analysis.' ") (citation omitted).

**7.** Under the Fourteenth Amendment, " '[t]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum state,' " *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)).

**8.** Cases relying on the "national" contacts test are legion when process is served under an applicable federal service provision. *See, e.g., Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 826 (5th Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056–57 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir.1993); *Cripps v. Life Ins. Co. of N. Amer.,* 980 F.2d 1261, 1267 (9th Cir.1992); *United Elec.,* 960 F.2d at 1085; *Hogue v. Milodon Engineering, Inc.,* 736 F.2d 989, 991 (4th Cir. 1984); *I.A.M. Nat'l Pension Fund. Ben. Plan A v. Wakefield Industries, Inc., Div. of Capehart Corp.,* 699 F.2d 1254 (D.C.Cir.1983); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–33 (7th Cir.1979). *See also AlliedSignal Inc. v. Blue Cross of Cal.,* 924 F.Supp. 34, 36 (D.N.J.1996); *Boon Partners v. Advanced Financial Concepts, Inc.,* 917 F.Supp. 392, 397 (E.D.N.C.1996); *Sovereign Bank, F.S.B. v. Rochester Community Sav. Bank,* 907 F.Supp. 123, 125 (E.D.Pa.1995); *Berk v. Ascott Inv. Corp.,* 759 F.Supp. 245, 261–62 (E.D.Pa.1991).

Nevertheless, when a federal statute furnishes subject matter jurisdiction, but does not also provide its own means of service, a federal court must rely on the forum state's long-arm statute. In this event, the federal courts are divided over whether the "minimum" or "national" contacts standard is applicable. Most federal courts apply the former. *See e.g., Cable/Home Communi-*

federalism concerns not operative under the Fifth Amendment.[9]

The two step jurisdictional analysis, applied here, compels the conclusion that personal jurisdiction over McD is entirely appropriate in Virginia. Despite the pellucidly clear weight of authority to the contrary, see *Omni Capital,* 484 U.S. at 105, 108 S.Ct. at 410, McD nonetheless contends that it eludes the literal grasp of Virginia's long-arm statute and that, as a consequence, there can be no personal jurisdiction here. McD's contention is of no avail, for Virginia Code § 8.01–328.1 has no application in the instant circumstances. Instead, ERISA itself provides for nationwide service of process.[10] McD was found in the United States and properly served in New York pursuant to Rule 4, Fed.R.Civ.P. Accordingly, reference to Virginia's long-arm statute is wholly unnecessary.

Further, since ERISA authorizes nationwide service of process,[11] the Fifth Amendment's "national" contacts theory is applicable here. And it is quite obvious that McD has sufficient aggregate contacts with the United States as a whole. McDonald concedes that McD is headquartered in Schenectady, does business in New York and Massachusetts, and employs numerous American citizens. These facts clearly establish that McD is subject to personal jurisdiction in this judicial district.

Notwithstanding the overwhelming weight of authority to the contrary, McD urges this Court to adopt the fairness test of *Willingway Hosp. v. Blue Cross & Blue Shield,* 870 F.Supp. 1102, 1109 (S.D.Ga.1994). In that case, a district court declined to exercise personal jurisdiction in an ERISA action involving an insurance company locat-

---

*cation Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855–56, n. 39 (11th Cir.1990); *In re Damodar Bulk Carriers, Ltd.,* 903 F.2d 675, 679 n. 5 (9th Cir.1990); *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 297 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264–69 (5th Cir.1983). But a few federal courts have adopted the latter test, holding that, even though service may be accomplished by means of the forum state's long-arm statute, the "national" contacts standard is more appropriate in the circumstances. *See. e.g., Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1269 (6th Cir.1984); *Hayeland,* 847 F.Supp. at 634; *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287 (D.Conn.1975); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 292–293 (3d Cir. 1981) (Gibbons, J., dissenting). Finally, the Seventh Circuit, without resolving the dispute, expressed sympathy with the minority view. *See United Rope Distributors, Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 536 (7th Cir.1991).

Ultimately, this Court need not consider this specific question, for ERISA, the federal statute at issue here, provides for nationwide service of process. Nevertheless, the dispute seems more academic than practical. If a federal court in a federal question case relies on the forum state's long-arm statute and that provision is not satisfied, it is simply irrelevant whether the federal court applies the "minimum" or "national" contact standards. There can be no personal jurisdiction without service of process. And if the forum state's long-arm statute literally grasps a non-resident defendant, then both tests would probably be satisfied as well.

**9.** Numerous commentators have noted that there is no valid reason in a federal question case to apply the Fourteenth Amendment's "minimum" contacts test. *See, e.g.,* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.1 at 310 ("[I]t seems anomalous that a federal court adjudicating federally created rights and exercising the sovereign power of the United States should be bound by limitations developed under the Fourteenth Amendment, which by its own language applies only to the several states and not to the federal government."); Robert C. Casad, *Personal Jurisdiction in Federal Question Cases,* 70 TEX. L. REV. 1589, 1596–97 (1992) ("Considerations of importance to Fourteenth Amendment due process—interstate federalism and protection of state interests—are irrelevant in federal question cases. There is no need in such cases to impose limits on the ability to acquire personal jurisdiction as a hidden method of controlling choice of law because national law defines the rights of the parties.").

**10.** Specifically, ERISA provides, in pertinent part, that:

> Where an action under [ERISA] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2).

**11.** In addition to ERISA, a rather broad collection of federal statutes authorize nationwide and worldwide service of process. *See, e.g.,* Federal Interpleader Act, 28 U.S.C. § 2361; Foreign Sovereign Immunities Act, 28 U.S.C. § 1608; Secu-

ed in Ohio[12] and applied a less rigorous version of the "minimum" contacts. MCD's reliance on *Willingway Hospital* is of no avail; that case, based on fairness concerns, is unpersuasive. Fairness to ERISA defendants in this regard can be assured, without reference to *International Shoe* and its progeny, by application of the federal venue and transfer statutes[13] as well as § 1132(e)(2) of ERISA itself.[14]

Accordingly, for the foregoing reasons, the motion to dismiss for lack of personal jurisdiction was denied and an appropriate Order has already issued.

The Clerk is directed to send copies of this Order to all counsel of record.

---

rities Exchange Act of 1934, 15 U.S.C. § 78aa; Clayton Act, 15 U.S.C. § 22.

**12.** Although the *Willingway Hospital* court is the first to decline personal jurisdiction on Fifth Amendment due process grounds, other courts have adopted similar fairness tests for measuring the constitutionality of nationwide service of process. *See, e.g., Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 203–204 (E.D.Pa. 1974); *U.S. Telecom, Inc. v. Hubert*, 678 F.Supp. 1500, 1508 (D.Kan.1987); *Duckworth v. Medical Electro–Therapeutics, Inc.*, 768 F.Supp. 822, 830 (S.D.Ga.1991).

**13.** *See* 28 U.S.C. §§ 1391, 1404; *Hogue*, 736 F.2d at 991; *AlliedSignal*, 924 F.Supp. at 37. *See also*

4 Wright & Miller, *Federal Practice and Procedure* § 1067.1 at 324.

**14.** In fact, the opinion in *Willingway Hospital* acknowledges that § 1132(e) of ERISA expressly limits where a plaintiff may file suit:

Th[at] provision imposes certain restrictions on where one can file suit—place of administration, breach, residence, or location. Consistent with all these limitations is that a plaintiff may have to go to a defendant and file suit in its locale. This provision does not give the plaintiff a carte blanche to hale the defendant into any federal district court in America.

*Willingway Hosp.*, 870 F.Supp. at 1108 (citation omitted).