**WILLINGWAY HOSPITAL, INC., Plaintiff,**

v.

**BLUE CROSS & BLUE SHIELD OF OHIO, Defendant.**

Civ. A. No. CV 693–075.

United States District Court,
S.D. Georgia,
Statesboro Division.

Oct. 31, 1994.

As Amended Nov. 28, 1994.

Harry L. Trauffer, Smyrna, GA, for plaintiff.

Paul Wain Painter, Jr., Painter, Ratterree, Connolly & Bart, Savannah, GA, George F. Karch, Jr., Michael E. Smith, Thompson, Hine and Flory, Cleveland, OH, for defendant.

### ORDER

EDENFIELD, Chief Judge.

Before the Court is the Defendant's motion to dismiss for want of personal jurisdiction. The Court **GRANTS** the Defendant's motion, finding that the Defendant lacks sufficient contacts with this jurisdiction to satisfy due process requirements.

## I. Background

This case springs from a dispute between a Georgia Hospital and an Ohio medical insurance company. On May 24, 1993, the Plaintiff, Willingway Hospital (hereinafter "Willingway"), filed suit in the Superior Court of Bulloch County, Georgia, to collect a $45,-658.79 health insurance claim, which the Defendant, Blue Cross & Blue Shield of Ohio (hereinafter "BCBS") refused to pay. Willingway's claim stems from its treatment of James Rudolph, a member of a group health insurance policy issued by BCBS. As Rudolph's assignee, Willingway contends that it has the right to recover the unpaid insurance proceeds.

BCBS removed this action from the Superior Court of Bulloch County, Georgia, to this Court on July 16, 1993, asserting federal question jurisdiction under 28 U.S.C. § 1331. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987). Willingway's claims are governed by the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. §§ 1001–1461.

Willingway provided medical services to James Rudolph during two periods: from January 28, 1991 to March 11, 1991 and from August 31, 1992 to October 12, 1992. (Complaint at 1 and 2). Rudolph's insurance policy required that beneficiaries obtain pre-certification for treatment. While Willingway alleges in its complaint that it obtained pre-certification authorizing five days of treatment (Complaint at 2), BCBS has supplied an affidavit stating that it did not provide any pretreatment authorization. (Waldron Aff. at 3).

Despite an anti-assignment clause in Rudolph's BCBS policy (Def. Mot. Sum. Jdgt., Ex. 2, at 29), Rudolph executed an assignment of benefits to Willingway to collect the $49,415.95 due for the treatment. (Complaint at 1–2). To date, BCBS has only paid $3,757.16, claiming that the remaining treatment, totalling $45,658.79, was not medically necessary. (Ans. at 2).

## II. Personal Jurisdiction

### A. Burden of Proof

Because this Court has chosen not to conduct a discretionary evidentiary hear-

ing on the defendant's motion to dismiss for lack of personal jurisdiction, Willingway has the burden of establishing a prima facie case of personal jurisdiction over BCBS. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988), *appeal after remand,* 912 F.2d 1392 (11th Cir.1990); *DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988). To do so Willingway must present enough evidence to withstand a motion for directed verdict. *Madara,* 916 F.2d at 1514. The Court must accept as true all facts alleged in the complaint that are uncontroverted by the defendant's affidavits. *E.g., Madara,* 916 F.2d at 1514; *Cable/Home Communication Corp. v. Network Prod., Inc.,* 902 F.2d 829, 855 (11th Cir.1990). Where, however, the defendant's affidavits and the plaintiff's assertions conflict, the Court must construe all reasonable inferences in favor of the plaintiff. *E.g., Madara,* 916 F.2d at 1514; *Cable/Home Communication,* 902 F.2d at 855.

## B. Personal Jurisdiction vs. Service of Process

▇ In determining whether to exercise personal jurisdiction, courts generally should first establish whether a defendant can properly be served with process under the applicable statutory authority, and then inquire if that service comports with the constitutional principles of due process. *Sun Bank, N.A. v. E.F. Hutton & Co.,* 926 F.2d 1030, 1033 (11th Cir.1991) (diversity case); *Go-Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1413 (9th Cir.1989) (federal question case).

In federal question cases it is imperative that these two inquiries remain separate, see Charles Wright and Arthur Miller, 4 Federal Practice and Procedure § 1063 (1987), because federal statutes that provide nationwide service of process do not necessarily provide nationwide personal jurisdiction. Service of process and personal jurisdiction are linked only in so far as they both must be satisfied before a case can go forward. *Id.*

The U.S. Supreme Court has only spoken on how personal jurisdiction relates to nationwide service of process once. In *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S.

97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987), the Court commented on the distinction between the two concepts when it provided:

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a *constitutionally sufficient relationship* between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Id.*

In *Omni* the Court was confronted with a federal question case where the controlling federal statute was silent as to service of process. The Court looked to Rule 4(e) of the Federal Rules of Civil Procedure, which provides that when determining jurisdiction, a federal court looks to either a federal statute or to the long-arm statute of the state in which the court sits. *Id.* at 105, 108 S.Ct. at 410. Since the statute in *Omni* did not provide for service of process, the Court concluded that the Louisiana Long–Arm Statute must be applied. *Id.* at 111, 108 S.Ct. at 413.

In so holding *Omni* does not reach the precise issue in this case, namely how is personal jurisdiction determined when a federal statute does provide for national service of process. The lower courts have generally gravitated towards applying a "national contacts" test. Wright and Miller, § 1067.1; *see e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2nd Cir.1981), *cert. denied* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301; *Horne v. Adolph Coors Co.,* 684 F.2d 255 (3rd Cir.1982); and *FTC v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir.1981). In *Jim Walter* a case filed under the Federal Trade Commission Act which provides for nationwide service, 15 U.S.C. § 49, the Fifth Circuit explained one rationale for a national contacts test:

> Because the district court's jurisdiction is always potentially, and, in this case, actually co-extensive with the boundaries of the United States, due process requires only that a defendant in a federal suit have

minimum contacts with the United States, "the sovereign that created the court."

*Id.* 651 F.2d at 256 (quoting *Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting)).[1] The Eleventh Circuit has only addressed the national contacts issue once, stating in *Delong,* 840 F.2d at 847, that "if a federal statute containing a service of process provision is applicable to the case, service on an out-of-state defendant is made according to its terms." *Id.* at 847. Unfortunately, the *Jim Walter* and *Delong* decisions have done little to clarify the Eleventh Circuit's position on the national contacts test. Based on the Supreme Court's decision in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the *Jim Walter* decision became questionable precedent only a year after it was rendered. In *Jim Walter* the Fifth Circuit had based its personal jurisdiction inquiries on sovereignty instead of due process. *Id.* 651 F.2d at 256. The Supreme Court found this general approach to be misguided when it stated in *Ireland* that, unlike the requirement of subject matter jurisdiction:

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause.... It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.

*Omni,* 484 U.S. at 104, 108 S.Ct. at 409 (quoting *Ireland,* 456 U.S. at 702, 102 S.Ct. at 2104). In light of *Ireland,* this Court does not feel constrained by the holding in *Jim Walter.*

Likewise, the *Delong* decision does not offer much in the way of substantive guidance. It simply provides that if a controlling federal statute contains a nationwide service of process provision, then the provision should be followed for the purposes of *serving process. Delong,* 840 F.2d at 847. The decision does not speak to how personal jurisdiction is established in the nationwide service of process context. Consequently, this Court has relative freedom to explore this area.

## C.  The *Duckworth* Test

This Court is not new to this issue; in *Duckworth v. Medical Electro–Therapeutics, Inc.,* 768 F.Supp. 822 (S.D.Ga.1991), this Court tentatively embraced the national contacts test and then fashioned a two prong test to ensure that due process was being served in making such personal jurisdiction inquiries. *Id.* at 830. This test was based primarily on one developed by the U.S. District Court for the Eastern District of Pennsylvania in *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 203–204 (E.D.Pa.1974). While *Duckworth* has not been followed, other jurisdictions have adopted an *Oxford* type analysis. *See U.S. Telecom, Inc. v. Hubert,* 678 F.Supp. 1500, 1508 (D.Kan.1987).

To survive the first prong of the *Duckworth* test, the plaintiff only needs to demonstrate that the defendant has sufficient contacts with the United States to ensure proper service under a nationwide service of process provision. *Duckworth,* 768 F.Supp. at 830.

Under prong two of the test, the burden of proof shifts, and the defendant is required to demonstrate a *compelling* case that exercising jurisdiction would offend "notions of fair play or substantial justice." *Id.* (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To determine whether the defendant has met his burden under the second prong, a court considers the following factors: the defendant's contacts with the forum, inconvenience to the defendant, judicial economy, probable situs of discovery proceedings, and the nature of the regulated activity. *Id.* (citing *Smith v. Pittsburgh Nat'l Bank,* 674 F.Supp. 542, 544 (W.D.Va. 1987); *Oxford,* 372 F.Supp. at 203–04 (E.D.Pa.1974)).

Although the Court believes that the *Duckworth* analysis was a valuable stepping stone in clarifying the law in this area, *Duckworth,* like many other cases applying the

---

1. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

national contacts test, fails to fully acknowledge that service of process and personal jurisdiction are two separate concepts that must be treated as such. Wright and Miller, § 1063. While not distancing ourselves from the national contacts test altogether, the Court's purpose here is to modify the *Duckworth* analysis so that the distinction between personal jurisdiction and service of process is preserved and to ensure the due process requirements are met.

## D. Nationwide Service of Process

Correctly characterizing "nationwide service of process" is at the heart of our inquiry. This concept is open to a multitude of interpretations. On one extreme, nationwide service simply connotes a party's amenability to be served with the judicial process or papers anywhere they might be found in the country. On the other extreme, this nationwide service of process incorporates personal jurisdiction. Under this latter interpretation some courts have melded the two concepts together. *See e.g., Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 71 (D.D.C. 1992) ("[m]inimum contacts with the forum state, as required under the traditional long-arm jurisdiction analysis, is not necessary [in nationwide service cases]"); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1055 (S.D.N.Y.1987) ("Where such nationwide service of process is authorized, a federal district court's jurisdiction is coextensive with the boundaries of the United States [and] due process requires only that a defendant in a federal suit have minimum contacts with the United States"). If one is served under a nationwide service of process provision, under this interpretation of service of process, personal jurisdiction is automatically exercised. *See* Federal Interpleader Act, 28 U.S.C. § 2361.

This latter approach, which divorces due process from personal jurisdiction inquiries, affords plaintiffs inordinate flexibility and does not provide enough due process protection for defendants. As the Supreme Court held in *Ireland* and reaffirmed in *Omni*, personal jurisdiction has its origins in the Due Process Clause of the Fifth Amendment. *Omni*, 484 U.S. at 104, 108 S.Ct. at 409

(citing *Ireland*, 456 U.S. 694, 102 S.Ct. 2099). To allow Congress to dictate personal jurisdiction through the enactment of nationwide service of process provisions, unquestioned by the judiciary is nonsensical. "If due process is to have any application at all in federal cases—and the Fifth Amendment requires that it does—it seems impossible that Congress could empower a plaintiff to force a defendant to litigate any claim, no matter how trifling, in whatever forum the plaintiff chooses, regardless of the burden on the defendant." Wright & Miller, § 1067.1.

■ Furthermore, the cases that are held up as granting Congress the authority to enact nationwide service provisions, do so only in dictum. *Id.* (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946); *Robertson v. Railroad Labor Bd.*, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119 (1925); and *U.S. v. Union Pacific R. Co.*, 98 U.S. 569, 25 L.Ed. 143 (1878). Moreover, all of these cases can be plausibly read to only encompass service of process with out reaching personal jurisdiction. *Id.* To say that due process has no place in a personal jurisdiction inquiry seems contrary to the whole concept of due process. The Due Process Clause was made part of the Fifth Amendment to establish certain individual rights and protect them from government infringement. Without more, Congress cannot legislate away a defendant's due process rights. *Id.* Accordingly, this Court, consistent with *Duckworth*, will perform a due process inquiry prior to exercising personal jurisdiction in nationwide service of process cases.

## E. Due Process Inquiries

■ The type of due process inquiry, however, must necessarily vary with the type of case. Personal jurisdiction in diversity cases are determined under the Fourteenth Amendment due process standard enunciated in *International Shoe* where the Supreme Court held:

[D]ue process requires ... that in order to subject a defendant to judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the

maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Although applying this minimum contacts test in any case would ensure the due process rights of the defendant were preserved, in federal question cases, most courts have conducted their due process inquiries under the Fifth Amendment instead of the Fourteenth. Wright & Miller, § 1067.1.

These courts reason that because federal question cases arise under federal laws and are tried in a federal forum, it is more appropriate to apply the Fifth Amendment due process standards in lieu of the Fourteenth Amendment minimum contacts requirements. As Charles Wright and Arthur Miller provide in their treatise, Federal Practice and Procedure:

> [I]t seems anomalous that a federal court adjudicating federally created rights and exercising the sovereign power of the United States should be bound by limitations developed under the Fourteenth Amendment, which by its own language applies only to the several states and not to the federal government.

Wright & Miller, § 1067.1 (citing *DeJames v. Magnificence, Inc.,* 654 F.2d 280, 292 (Gibbons, J., dissent), *cert. denied* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620).

### 1. "Automatic" Personal Jurisdiction

While there is some consensus among the federal courts that the Fifth Amendment, not the Fourteenth Amendment, controls due process analysis in nationwide service of process cases, this consensus is illusory. While their is agreement that the Fifth Amendment applies in these cases, there is little agreement on the scope of Fifth Amendment analysis that should be applied. One category of cases holds that the Fifth Amendment only requires that the "defendant receive sufficient notice of the pending proceedings as set out in *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny." *U.S. Telecom,* 678 F.Supp. at 1508. Essentially, if proper notice is given, due process under the Fifth Amendment is satisfied as long as the party is a United States citizen. *Id.* (citing *Piper Acceptance Corp. v. Slaughter,* 600 F.Supp. 169 (D.Colo.1985). The courts deciding these cases, as discussed above, have melded the concepts of nationwide service of process and personal jurisdiction and consequently are free to ignore the requirements of due process altogether. This Court refuses to subscribe to this position.

### 2. Fairness Test

■ The opposing line of cases offers a far more palatable alternative. These cases, which include *Oxford* and *Duckworth,* acknowledge the full reach of the Fifth Amendment's Due Process Clause and require that certain minimum contacts be present before personal jurisdiction is exercised. In *Horne v. Adolph Coors Company,* 684 F.2d 255 (1982), for example, the Third Circuit held that "[t]he only constitutional limitation [in nationwide service of process cases] is whatever fairness to the defendant is required by fifth amendment due process." *Id.* at 259. The courts that have adopted this fairness test apply the *International Shoe* minimum contacts analysis, but in a more relaxed fashion. Wright & Miller, § 1067.1. This is precisely what this Court did in deciding *Duckworth.* The Court looked at minimum contact, as well as other factors, but not as rigorously as we would have under *International Shoe.*

### F. Service of Process and Personal Jurisdiction Authorities

■ In analyzing a federal question case, a court's initial inquiry should center on whether the governing federal statute authorizes nationwide service of process and whether such a provision, if present, addresses personal jurisdiction. If it does not, pursuant to *Omni,* the court should apply the long-arm statute of the state in which it sits. If the statute does provide for nationwide service of process, then two outcomes are possible.

If in crafting the statute, Congress spoke only to nationwide service of process and did not mention personal jurisdiction, personal

jurisdiction should be determined under the appropriate long-arm statute, as in *Omni*. This is the only outcome that acknowledges the distinction between personal jurisdiction and service of process. Furthermore, this approach is not contrary to *Omni*, which only spoke to situations in which Congress was silent as to service of process and personal jurisdiction altogether. As discussed above, it is not even clear whether Congress has the authority to include nationwide service of process provisions in federal legislation. To simply infer from these service of process provisions that personal jurisdiction is also perfected is contrary to due process. Congress must be explicit if it intends to infringe upon due process rights, and courts should not facilitate such infringement simply because one might infer that nationwide service of process, by its very nature, confers personal jurisdiction.

If, however, it is clear that Congress intended to extend both service of process and personal jurisdiction nationwide in a particular statute, such provisions should be followed. *See Delong*, 840 F.2d at 847. The Fifth Amendment due process requirements of fairness to the defendant, as set forth in *Duckworth* and elsewhere, of course, must also be met. 768 F.Supp. at 830; *Oxford*, 372 F.Supp. at 203–204.

### G. Extending *Duckworth*

■ Via the Fifth Amendment, and following the *Oxford* example this Court applied a relaxed minimum contacts tests in *Duckworth*. 768 F.Supp. at 830. Now the Court holds that in cases where Congress's purpose in expanding personal jurisdiction would not be advanced by extending jurisdiction in a particular case, the *International Shoe* test can be afforded greater weight.[2] Congress includes nationwide service provisions in federal statutes to achieve defined purposes and has done so on numerous occasions. *See e.g.*, Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1365(c)(3); Employee Retirement Income Securities Act, 29 U.S.C. § 1132(e)(2); Federal Interpleader Act, 28 U.S.C. § 2361. Consequently, when

such purposes are absent in a particular case, then the due process analysis should take this into account. "When no special federal interest is implicated ... extraterritorial assertions of jurisdiction should be expected to comport, under the Fifth Amendment national contacts tests, with the same basic notions of 'fair play and substantial justice' that inform the International Shoe standards." Wright & Miller, § 1067.1 This of course adds one more layer to the subjective analysis that pervades any due process inquiry, but in doing so ensures through this tailoring that defendant's due process rights are not unnecessarily trammeled.

### III. Applying the Test

### A. ERISA's Service of Process Provision

■ ERISA contains a recognized service of process provision. *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261 (9th Cir. 1992). It provides:

> Where an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). This provision appropriately separates the concepts of personal jurisdiction and service of process. The provision imposes certain restrictions on where one can file suit—place of administration, breach, residence, or location. Consistent with all these limitations is that a plaintiff may have to go to a defendant and file suit in its locale. *Id.* This provision does not give the plaintiff a carte blanche to hale the defendant into any federal district court in America.

In contrast, the service of process provision is less restrictive. According to its terms, a Federal Marshall, for example, can serve process on a defendant anywhere in the country. The defendant can then be compelled to appear in any court where per-

---

**2.** At least one case has simply applied the minimum contacts test in its purest form to a nation-wide service of process case. *Nieves*, 771 F.Supp. at 159.

sonal jurisdiction has been perfected. *Id.* This, of course, is how the typical national service of process provision works.

In applying these ERISA provisions to the case before us, it is clear that we are dealing with a Congressional provision that has spoken to both service of process and personal jurisdiction. Because the service of process provision is clear, we can turn our attention immediately to the statute's personal jurisdiction provision.

There is little quarrel that the BCBS health plan was administered and was breached, if any breach occurred, in Ohio. Likewise, the BCBS "resides" as a corporation in Ohio. The only issue under the ERISA personal jurisdiction provision, therefore, is whether BCBS may be "found" in Georgia. Certainly, Congress meant more by the term "found" than physical presence; a corporation never physically "resides" in any state. Thus, we must infer that "found" can be defined through the appropriate due process analysis.

### B. Federal Interest

The extent of due process analysis in federal question cases, again, is contingent on whether federal interests are present. When faced with the typical ERISA defendant—an individual policyholder, see e.g. *Nieves v. Houston Industries, Inc.,* 771 F.Supp. 159 (M.D.La.1991)—a broad personal jurisdiction provision is understandable. In enacting Section 1132(e)(2), Congress wanted to ensure that the federal and state courts were accessible to ERISA participants and beneficiaries, and that deserving plaintiffs were not denied recovery because they did not have the resources to file suit in another state. *See* S.Rep. No. 127, 93rd Cong., (1973); H.Conf.Rep. No. 1280, 93rd Cong., (1973), *reprinted in* 1974 U.S.C.C.A.N. pp. 4639, 4838, 4871, 5038, 5107. Such is not the case here; the plaintiff is quite capable of litigating this case in either Ohio or Georgia, and consequently, there does not appear to be a federal interest requiring that this case be litigated in either forum. Although appropri-

ate in this case, the Court cautions that this "financial resource" test should be applied sparingly.

### C. Modified *Duckworth* Test

In light of the fact that this Court can find no significant federal interest present to warrant a broad interpretation of personal jurisdiction, the Court determines that it would be appropriate to give more weight to the *International Shoe* minimum contacts test in conducting the due process analysis here. *See* Wright & Miller, § 1067.1. Accordingly, we will apply the *Duckworth* test, but without shifting the burden of proof to the defendant. That is, under prong two of the test the defendant will not have to provide *compelling* reasons why jurisdiction is improper. Instead, the plaintiff will have to demonstrate the appropriateness of exercising personal jurisdiction under the applicable [3] *International Shoe* minimum contacts requirements.

As provided above, in its due process fairness determination, *Duckworth* looks at the following factors: the defendant's contacts with the forum, inconvenience to the defendant, judicial economy, probable situs of discovery proceedings, and the nature of the regulated activity.

#### 1. Insufficient Contacts

Beginning with the contacts inquiry, the Court finds that BCBS has not made sufficient contacts with the State of Georgia to warrant personal jurisdiction in this forum. According to BCBS it does not conduct business or solicit business in the state; does not insure Georgia residents; maintains no address, phone listing, offices or personnel in Georgia; owns no property in the state, has no bank accounts in the state, and has no statutory agent in Georgia.

All of BCBS's activities and decisions concerning coverage for Rudolph, an Ohio resident, took place in Ohio, and the communication of these decisions to the Plaintiff were the sole contacts that BCBS had with the State of Georgia. These contacts only

---

**3.** Not all the *International Shoe* requirements are necessarily applicable in this context. For example, because the case centers on a federal statute

and is before a federal court, issues of state sovereignty are not relevant.

amount to telephone calls and letters, which are not sufficient, under the facts in this case, to establish personal jurisdiction. *Commercial Casualty Insurance Co. v. BSE Management, Inc.,* 734 F.Supp. 511, 514 (N.D.Ga.1990) (applying Georgia Long Arm Statute which has been interpreted as being coextensive with minimum contacts).

These contacts are much less significant than those in *Duckworth* where this Court, applying a more plaintiff friendly standard, as provided above, extended personal jurisdiction over the defendant. There the defendant made several personal and business trips into this forum in addition to contacting the plaintiff by telephone and Federal Express. *Duckworth,* 768 F.Supp. at 831. In this case, BCBS has never ventured across the Georgia state line.

In U.S. District Court for the Middle District of Louisiana decision in *Nieves,* 771 F.Supp. 159 (M.D.La.1991), also offers valuable insights into this case. In *Nieves* the court applies an unadultered *International Shoe* minimum contacts test in an ERISA case similar to this one. For all intents and purposes, this Court is applying the same due process standard as the *Nieves* court, but here we are supplying a more developed rationale.

In *Nieves,* the plaintiff moved from Texas to Louisiana, but maintained her health insurance. *Id.* at 160. She continued to pay her premiums, filed claims, and received payments from the Texas insurance company. Supervisory insurance company officials even admitted knowing that she had moved to another state. On these facts the court held that the insurance company "could reasonably have anticipated that any medical claims which may be denied by the Plan may have required the defendant to defend its position in the state of Louisiana." *Id.*

The facts in *Nieves,* however, are far more favorable to the plaintiff than the facts in this case. According to the BCBS's affidavit, it did not provide any prior authorization for Rudolph to seek treatment at Willingway. Even if it had, as the Plaintiff contends, the insurance policy has a non-assignment clause. Thus, it was still quite reasonable for BCBS to believe that it would be dealing directly with Rudolph, an Ohio resident, to resolve any claim disputes.

Aside from this disputed "contact," the only other contacts BCBS had with the State of Georgia arose from Willingway's insurance claim for the expenses it incurred in treating Rudolph. In *Nieves* the insurance company had an ongoing relationship with a nonresident who was paying the premiums and filing and collecting on insurance claims. *Nieves,* 771 F.Supp. at 160. Rudolph, in contrast, was a Ohio resident who traveled outside of the state to seek treatment. When compared to *Nieves,* this Court finds that BCBS lacks minimum contacts with this forum.

Because nationwide service of process cases that apply minimum contacts are few and have fact patterns differing from this one, the Court now turns to diversity cases for guidance. In *Commercial Casualty* the U.S. District Court for the Northern District of Georgia held that it lacked personal jurisdiction over a California Corporation that had purchased an insurance policy from a Georgia insurance company through a New York insurance broker. In tailoring the insurance policy to the needs of the defendant, the three companies engaged in a series of negotiations. The parties made over fifty communications via telephone, facsimile, and letter to negotiate the policy and to resolve a dispute over reinsurance that arose after the policy's issuance. Many of these communications were made directly between the Georgia insurer and the California insured.

In addition to discussing these contacts, the court found that the insurance contract was made under California laws and that there was no indication whether the insurance premiums were to be paid to the Georgia insurance company, or to the New York broker. Moreover, none of the negotiations between the parties occurred in Georgia. Accordingly, the court held that defendant's contacts with the State of Georgia were insufficient to establish personal jurisdiction. *Id.* 734 F.Supp. at 518.

Like *Commercial Casualty,* telephone and mail communications comprised the sole contacts between the parties in this case. The insurance policy was not issued under Geor-

gia law or to a Georgia resident, and the BCBS never ventured onto Georgia soil to negotiate the insurance policy or the claims involved in this case.

*Rambo v. American Southern Ins. Co.*, 839 F.2d 1415 (10th Cir.1988), also shares similarities to this case. In *Rambo*, the plaintiff, an Alabama resident, purchased truck insurance from a Georgia insurance company and later moved to Texas. The insured truck was then stolen and, while still in Texas, the plaintiff filed a claim with its Georgia insurer. The plaintiff then moved to Oklahoma. The truck was recovered soon thereafter by the insurance company and repaired in Texas at its direction. While the repairs were being made, the insurance company wrote ten letters and made eight to ten telephone calls to the plaintiff in an attempt to resolve the claim.

While it acknowledged that under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 2183 n. 18, 85 L.Ed.2d 528 (1985), even a single letter or telephone call can establish personal jurisdiction if it creates a "substantial connection" with the forum, the *Rambo* court held that this substantial connection threshold had not been met by the communications made by the Georgia insurance company. The court stressed that it is the nature of the communications that is the determinative factor and that minimum contacts are not necessarily established simply because a plaintiff's move into the forum state requires the defendant to communicate with him there. *Id.* 839 F.2d at 1420.

In its order the *Rambo* court discussed the *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which is illuminating in this case as well. In *McGee* the Supreme Court found that personal jurisdiction was established where a Texas insurance company's single contact with the California plaintiff was the solicitation of a reinsurance agreement and the acceptance of premiums mailed to Texas by the plaintiff. In contrast, Rudolph's policy was issued in Ohio by BCBS, an Ohio corporation, and there is no evidence that Rudolph paid any of his premiums from anywhere but Ohio. Furthermore, as the *Rambo* court points out,

"*McGee* is frequently characterized as the Court's most expansive application of the 'minimum contacts' test." *Rambo*, 839 F.2d at 1421.

These cases demonstrate that BCBS does not have sufficient contacts under *International Shoe* to support personal jurisdiction in this forum. Although not applicable here, the Court also finds that this Court would not have personal jurisdiction over the defendant under the old *Duckworth* test. Based on the insignificance of BCBS's contacts with the State of Georgia, BCBS could provide compelling reasons why being haled into court would be improper.

### 2. Other Considerations

Aside from BCBS's limited contacts with this forum, other factors militate against exercising personal jurisdiction over BCBS. Judicial economy would be served by refusing to exercise jurisdiction. Because BCBS has no assets within this Court's jurisdiction, if Willingway were to prevail in this Court, it may still have to institute legal proceedings in Ohio to collect any damages awarded. This Court would prefer that all such matters be resolved in the same forum.

In addition, while traveling the 750 miles between this forum and one in Cleveland, Ohio, where BCBS is located is not an undue burden for either party and certainly would not so gravely inconvenience BCBS as to put it at a severe disadvantage in this litigation, see *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185, it seems more equitable considering the facts before us to impose this journey on the Plaintiff.

Considering the above, this Court holds that it lacks personal jurisdiction over BCBS and thus must dismiss this case. It would offend traditional notions of fair play and substantial justice to hold otherwise.

### IV. Conclusion

Because the BCBS does not have sufficient contacts with the State of Georgia, this case is dismissed for want of personal jurisdiction.

SO ORDERED.