**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND; Board of Trustees, National Training Fund for the Sheet Metal and Air Conditioning Industry; Board of Trustees, National Energy Management Institute Committee; Board of Trustees, Sheet Metal Occupational Health Institute Trust Fund; and Board of Trustees, Sheet Metal Workers' International Association Scholarship Fund, Plaintiffs.**

v.

**ELITE ERECTORS, INC., Skylight Consultants of America, Inc., and Mary Lowry, Defendants.**

No. IP 98–298–C H/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 18, 1999.

Christopher A. Poling Kunz & Opperman, Indianapolis, IN, Brian D. Black, Office of General Counsel, Sheet Metal Workers' National Pension, Alexandria, VA, for Plaintiffs.

Bret S. Clement Buschmann Carr & Shanks, Indianapolis, IN, for Defendants.

## ENTRY ON PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

HAMILTON, District Judge.

This court previously granted the motion of defendants Skylight Consultants of America, Inc. and Mary Lowry to set aside a default judgment against them entered by the United States District Court for the Eastern District of Virginia. The Virginia court had held that both Skylight Consultants and Lowry were alter egos of defendant Elite Erectors, Inc. so that they were both responsible for debts that Elite Erectors owed to the plaintiffs, who are trustees of employee benefit plans. This court held that the Eastern District of Virginia lacked personal jurisdiction over Skylight Consultants and Lowry so that its judgment against them was void. See *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 46 F.Supp.2d 852 (S.D.Ind.1999).

This court concluded in essence that, notwithstanding the default judgment, Skylight Consultants and Lowry were entitled to one fair chance to litigate any facts and legal issues that were essential to plaintiffs' claims that they were alter egos of defendant Elite Erectors so as to make them proper defendants subject to ERISA's provision for nationwide service of process. Neither this court nor the parties have identified directly controlling authority on this question, which has practical implications for enforcement and collection of debts under ERISA. The plaintiff trustees have moved for reconsideration. Defendants Skylight Consultants and Lowry have not responded to the motion to reconsider.

Plaintiffs argue that whether Lowry and Skylight Consultants were alter egos of Elite Erectors is a matter going to the merits of plaintiffs' claims and not to personal jurisdiction, so that the default judgment against Lowry and Skylight Consultants barred them from litigating the alter ego issue in this proceeding to enforce the judgment.

Plaintiffs' theory would give administrators of employee benefit plans extraordinary power to force persons and firms associated with ERISA employers, as distinct from the employers themselves, to respond to lawsuits across the country to collect delinquent plan contributions. Under plaintiffs' theory, if a plan administrator merely alleges on "information and belief," as plaintiffs did here, that a person is the alter ego of an ERISA employer delinquent in its plan contributions, that allegation alone enables the plan administrator to take advantage of ERISA's provision for nationwide service of process to force the defendant to respond to litigation across the country.

Under plaintiffs' theory, if the defendant does not appear, the plan administrator can then obtain a default judgment based on the allegations on information and belief, and can then, in a proceeding to enforce the judgment, bar any challenge to the judgment based on lack of personal jurisdiction. The only limits on the plan administrator's ability to force distant defendants to respond to thin "information and belief" allegations that they are alter egos for proper defendants would come from Federal Rules of Civil Procedure 11 (signature on filing certifies that factual contentions have evidentiary support) and

60(b)(3) (allowing relief from judgment procured by fraud on the court).[1]

■■■■ Plaintiffs' motion to alter this court's judgment is denied. This court holds that when a plaintiff seeks to enforce a default judgment on a claim against a distant defendant alleged only to have been an alter ego of the relevant ERISA employer, the default judgment does not prevent the defendant from presenting evidence to show that he or she or was not in fact an alter ego of the employer.

First, as the court discussed in its initial opinion, it is an open question whether plaintiffs' claims against Lowry and Skylight Consultants arise under state law or under ERISA. This court reads the Supreme Court's comments in *Peacock v. Thomas*, 516 U.S. 349, 353–54, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), as implying (though not deciding) that ERISA itself does not create a claim for relief on the theory that an ERISA employer's corporate veil should be pierced to reach a defendant. See also *Plumbers' Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297, 1301–02 (7th Cir.1989) (whether corporate officers who are not parties to collective bargaining agreement requiring contributions to plan may be held liable for delinquent plan contributions is to be determined under state law); *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1192–94 (7th Cir.1989) (same). If that interpretation is correct, then plaintiffs' claims against Lowry and Skylight Consultants do not arise under ERISA and there is no basis for subjecting Lowry and Skylight Consultants to ERISA's nationwide

service of process provision, 29 U.S.C. § 1132(e)(2).[2]

Plaintiffs point out correctly that nationwide service of process is an important element of ERISA's enforcement mechanisms. The House and Senate committee reports concerning ERISA explain in identical language:

> The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law [for] recovery of benefits due to participants. For actions in federal courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the court.

H.R.Rep. No. 93–533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4655; Sen. Rep. No. 93–127 (1973), reprinted in 1974 U.S.C.C.A.N. 4838, 4871.

This committee language does not mean, however, that ERISA should be construed to remove anything a plan administrator perceives to be a jurisdictional or procedural obstacle. The Seventh Circuit has explained in an analogous context:

> The intention of Congress was to extend service of process nationwide in ERISA matters because public policy justifies requiring persons who violate its provisions to defend themselves in courts across the country. This reasoning was not intended to apply to a party, such as respondent, who has no involvement

---

1. Defendants have not argued, and the court does not mean to imply, that plaintiffs' allegations on "information and belief" amounted to fraud on the court in Virginia.

2. As the court explained in its original entry, plaintiffs also alleged that Skylight Consultants was also a party to a multiemployer collective bargaining agreement that required it to contribute to the plaintiff funds on behalf of its employees. See 46 F.Supp.2d at 858. Plaintiffs are not suing Skylight Consultants for violating its own obligations directly under that agreement. Rather, plaintiffs seek to hold Skylight Consultants liable for Elite Erectors' obligations under its agreement with plaintiffs. That is a veil-piercing claim independent of and distinct from Skylight Consultants' own obligations under the agreement. Thus, the allegation that Skylight Consultants was itself an employer under ERISA is not sufficient to enable plaintiffs to use ERISA's nationwide service of process on a separate claim against Skylight Consultants based on Elite Erectors' obligations.

whatsoever with the pension or profit sharing plan.

*Rodd v. Region Construction Co.*, 783 F.2d 89, 91 (7th Cir.1986). In *Rodd* the Seventh Circuit held that plan trustees could not use ERISA's nationwide service of process against a party to a post-judgment supplemental proceeding. A bank had been served with a citation in supplemental proceedings seeking information about the judgment-defendant's assets, and the bank did not respond. The district court entered a finding of contempt against the bank and entered a judgment holding the bank liable for the full amount of the judgment-defendant's outstanding liability. When the bank moved to set aside the contempt finding and judgment for lack of jurisdiction, the issuing court granted that relief. The Seventh Circuit affirmed. *Id.* at 91–92.

■ *Rodd* does not control this case, but its reasoning is instructive here. Congress could have reasonably expected that most "employers" who establish or agree to plans under ERISA have consciously and voluntarily submitted to ERISA's terms—by the very act of establishing a retirement or employee benefit plan, or by signing a plan that is already established. That is, for an employer who indisputably has agreed to be subject to ERISA, use of the nationwide service of process provision simply comes with the territory. See *Green v. William Mason & Co.*, 996 F.Supp. 394, 397 (D.N.J.1998) (stating that ERISA gives fair notice to parties who engage in covered activities that they may be sued in any district court, but granting motion to dismiss ERISA claim against employer's parent company). Courts may fairly consider such an employer to have consented to the nationwide service of process, just as a party to a contract may, in the terms of the contract, consent to jurisdiction in a particular forum.

There is no persuasive reason, however, to construe ERISA as applying those same burdens of nationwide service of process to persons who have not established or agreed to the employee benefit plan in question, and who are merely alleged (but not proven) to have acted as alter egos of an ERISA employer. Based on this reasoning, then, treating the plaintiffs' claims against Lowry and Skylight Consultants as arising under state law rather than ERISA is the simplest and, in this court's view, fairest resolution of the problem here.

■ Even if a veil-piercing claim for delinquent plan contributions were treated as a claim arising under ERISA, however, plaintiffs would still not be entitled to enforce in this district the default judgment they obtained in Virginia. The governing general principle here is that a defendant is entitled to one fair opportunity to litigate issues of fact and law essential to a court's exercise of personal jurisdiction over that defendant. The defendant may take that opportunity in the original court or may take the riskier path of waiting until the plaintiff tries to enforce a default judgment from a distant court. See generally *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649 (1938); *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732–34 (2d Cir.1980).

■ In addition, when a defendant contests personal jurisdiction—whether in the original action or in a proceeding to enforce a default judgment—neither the plaintiff's mere allegations nor even the findings of the court issuing a default judgment are controlling. The Supreme Court squarely decided this question in *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 21 L.Ed. 897 (1873). The issue there under the Full Faith and Credit Clause of Article IV of the Constitution was whether a party against whom a default judgment had been rendered in one state had the right to introduce evidence in the court of another state contradicting the findings of the issuing court on facts essential to its jurisdiction.

Thompson was the sheriff of Monmouth County, New Jersey. He had seized a sloop pursuant to a New Jersey statute that authorized a sheriff to seize a vessel unlawfully gathering shellfish in the county. The statute required, however, an *ex parte* determination by two justices of the peace of the county where the seizure had been made that the seizure was proper. Sheriff Thompson had obtained the required permission from two justices of the peace, who found that the vessel had been raking clams in violation of the law and that the seizure had occurred in New Jersey waters and Monmouth County waters. Whitman, the owner of the sloop, then sued Thompson in federal court in New York for trespass. Thompson argued at trial that the New Jersey court's findings were conclusive and showed that he was entitled to seize the sloop. The trial court rejected that view and allowed Whitman to offer evidence that the seizure did not take place within New Jersey waters or Monmouth County waters. The jury found for plaintiff Whitman after finding that the vessel had not been raking clams in Monmouth County the day of the seizure, and that the seizure did not occur in Monmouth County waters.[3]

On appeal to the Supreme Court, Thompson argued that Whitman should not have been permitted to offer evidence contradicting the findings of the New Jersey court to the effect that the seizure had occurred in Monmouth County waters. The Supreme Court reviewed the authorities holding that a judgment issued without jurisdiction is void and can be attacked collaterally. The Supreme Court then held that the issuing court's findings on facts essential to its jurisdiction were not binding in the action for trespass. Whitman was free to offer evidence contradicting the issuing court's findings on jurisdictional facts:

But if it is once conceded that the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record. If that can be successfully done no statements contained therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as effectually to nullify the right of such inquiry.

85 U.S. at 468, 18 Wall. 457; see also *Durfee v. Duke*, 375 U.S. 106, 107–08, 110, 116, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (recognizing *Thompson* as leading case on this point, but distinguishing it where the losing party had actually litigated jurisdictional questions in the issuing court); *Adam v. Saenger*, 303 U.S. at 62, 58 S.Ct. 454 (citing *Thompson* for proposition that "when the matter of fact or law on which jurisdiction depends was not litigated in the original suit it is a matter to be adjudicated in the suit founded upon the judgment"); *Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29, 37 S.Ct. 492, 61 L.Ed. 966 (1917) ("But it must be taken to be established that a court cannot conclude all persons interested by its mere assertion of its own power even where its power depends upon a fact and it finds the fact," citing *Thompson* and *Tilt v. Kelsey*, 207 U.S. 43, 51, 28 S.Ct. 1, 52 L.Ed. 95 (1907)); accord, *Harris v. Hardeman*, 55 U.S. (14 Howard) 334, 338 (1852) (affirming order setting aside default judgment: "in all judgments by default, whatever may affect their competency or regularity, every proceeding indeed, from the writ and indorsements thereon, down to the judgment itself, inclusive, is part of the record, and is

---

**3.** The *Thompson* case also illustrates the problem posed when the same facts are relevant to both the merits of a claim and the issuing court's jurisdiction to enter judgment on the claim. In *Thompson*, the "jurisdictional" facts included whether the vessel had been raking clams in violation of New Jersey law, which was also critical to the merits as to whether the seizure had been lawful. This problem is discussed further below at pages 845–47.

open to examination"); *United States v. County of Cook,* 167 F.3d 381, 388 (7th Cir.1999) ("A party that simply refuses to appear may contend in a later case that the first tribunal lacked jurisdiction—though jurisdiction is the only issue thus preserved, and if the first court had jurisdiction then the judgment must be enforced.").

In *Harris v. Hardeman,* the Supreme Court quoted with approval the following passage from New York's highest court in *Starbuck v. Murray,* 5 Wend. 148, 21 Am. Dec. 172 which could have been addressed to the plaintiffs' argument in this case, substituting only defendants' alter ego status for the New York court's references to the defendant's appearance:

> But it is contended, that if other matter may be pleaded by the defendant, he is estopped from asserting any thing against the allegation contained in the record. It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It appears to me, that this proposition assumes the very fact to be established, which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgment are void, and, therefore, the supposed record is, in truth, no record. * * * The plaintiffs, in effect, declare to the defendant—the paper declared on is a record, because it says you appeared; and you appeared, because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact. Unless a court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not, therefore, to be estopped from proving any fact which goes to establish the truth of a plea alleging the want of jurisdiction.

*Harris,* 55 U.S. at 341, 14 How. 334 (internal quotation marks omitted). See generally Restatement (Second) of Judgments § 77(2) (1982) (evidence extrinsic to record before issuing court may be used to challenge jurisdiction of issuing court, although clear and convincing evidence may be necessary).

■■ Thus, a defendant has a right to present evidence to dispute allegations which, if true, might establish personal jurisdiction. Although a defendant may choose to submit the issue on the pleadings, or perhaps affidavits, factual disputes material to the issue of personal jurisdiction can also be resolved by the trial court in a pretrial evidentiary hearing. See *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 914–15 (7th Cir.1994) ("Certainly if it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing, the district judge can, as with other preliminary questions, defer resolution to the trial."), citing *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1215 (6th Cir.1989), and *Stauffacher v. Bennett,* 969 F.2d 455, 459–60 (7th Cir.1992); see also *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903–04 (2d Cir.1981) (where personal jurisdiction depended on disputed facts about whether individual defendant operated corporation as a shell, court could not grant dismissal for lack of personal jurisdiction without evidentiary hearing).

■ Plaintiffs seek to avoid the principles of *Thompson v. Whitman* and the other cases just cited by arguing that a defendant may not challenge facts essential to an issuing court's jurisdiction if those facts are also relevant to the *merits* of the decision. Plaintiffs contend this court's ruling was erroneous because it allowed Lowry and Skylight Consultants to litigate the merits of the claims against them after the Eastern District of Virginia decided those issues by issuing the default judgment. Plaintiffs' argument on this point is not persuasive. In some cases, and this is one, some of the same facts are essential both to the merits of a claim for relief and to the exercise of personal juris-

diction. See, *e.g.*, *Stauffacher*, 969 F.2d at 459 (in *dicta*, addressing problems posed where personal jurisdiction over foreign defendant is based on alleged, but disputed, conspiracy with local defendant; jurisdictional issue merges with merits); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n. 2 & 1289 n. 6 (9th Cir.1977). A defendant's ability to contest personal jurisdiction should not be lost merely because some of the facts relevant to personal jurisdiction are also relevant to the merits.

When the issues of personal jurisdiction and the merits are intertwined and the defendant appears to contest personal jurisdiction, a court can face a difficult problem in finding a procedure to sort out the distinct issues fairly. In *Data Disc*, the Ninth Circuit explained that, where facts essential to jurisdiction are intertwined with the merits of the underlying claims, and where there are factual disputes concerning jurisdiction, the district court has discretion in deciding on a procedure for resolving the jurisdictional issue. 557 F.2d at 1285–86 n. 2 (collecting numerous cases). The court may resolve the issue in a pretrial evidentiary hearing or may permit the case to be tried after the plaintiff has made a prima facie showing of jurisdiction and postpone a final decision on those facts until trial. See *id.*

In *Stauffacher*, the Seventh Circuit also recognized the need for flexibility in cases where jurisdictional issues are intertwined with the merits. 969 F.2d at 459. The court also commented:

> The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums. A defendant could always refuse to appear, and take his chances, but then it would be easy for the plaintiff, lacking an opponent, to "prove" that there really had been a

conspiracy and so obtain a default judgment that the defendant could not upset. 969 F.2d at 460. Those comments seem to apply here, where the plaintiffs sought to subject Skylight Consultants and Mary Lowry to personal jurisdiction based only on "bare allegations" that were based only on "information and belief."

■ But what about the comment in *Stauffacher* that the defendant accused of a conspiracy would not be able to upset the default judgment based on the allegation? That comment should not pose an obstacle to the defendants in this case. The comment is best understood as directed to cases like *Stauffacher* itself in which courts are faced with an overlap of personal jurisdiction and the merits in connection with a motion to dismiss by a defendant who has chosen to appear and to contest personal jurisdiction. In this case, however, defendants Lowry and Skylight Consultants took the different but legally acceptable approach of risking default judgment and litigating in this court the Virginia court's jurisdiction over them. The fact that the issues of personal jurisdiction and the merits are intertwined should not foreclose the distant defendants from litigating the issue of personal jurisdiction after a default judgment is entered (especially when the default judgment is based only on a failure to respond to allegations made on "information and belief").

To illustrate the point, suppose that a plaintiff sues foreign defendant "Jones" for breach of contract. The plaintiff attaches to the complaint a written contract that contains a provision consenting to jurisdiction in the forum chosen by plaintiff. The contract is signed by "Smith" as "Partner, Smith & Jones." Smith is judgment-proof, and the plaintiff obtains a default judgment against Jones. Jones seeks to bar enforcement of the judgment based on lack of personal jurisdiction. Jones comes forward in the enforcement court with evidence conclusively showing that she was never a partner of Smith's, so that she cannot be held liable on the contract and

she cannot be deemed to have agreed to the contract's term consenting to jurisdiction in the original forum.

Under plaintiffs' theory in this case, the mere allegation (perhaps again on "information and belief") that Jones was a party to the contract providing for consent to jurisdiction would be sufficient to establish personal jurisdiction. In response to Jones' argument that she was never Smith's partner, plaintiffs in this case would say that is an argument going to the merits, which is foreclosed by the default judgment.

That result would be wrong, however. Jones would be entitled to one fair opportunity to litigate the factual and legal bases for the asserted jurisdiction, even if those issues were intertwined with the merits of the contract claim. See *Hall v. Lanning*, 91 U.S. 160, 169–70, 1 Otto 160, 23 L.Ed. 271 (1875) (member of partnership against whom default judgment was entered could defeat enforcement of judgment by showing that partnership had been dissolved before other partner appeared in issuing court); *Stauffacher*, 969 F.2d at 458–59 (forum selection clause in agreement not enforceable against defendants who were not parties to agreement); see generally, *e.g.*, *Thompson*, 85 U.S. at 468–70, 18 Wall. 457 (affirming judgment based on jury's findings contrary to issuing court's findings about jurisdictional facts in *ex parte* proceeding; jurisdictional facts also relevant to merits—whether vessel had raked any clams within the county the day of the seizure).

Plaintiffs contend they are entitled to use ERISA's nationwide service of process against defendants Lowry and Skylight Consultants based on no more than the allegation on information and belief that these two defendants were alter egos of Elite Erectors. The Second Circuit's opinion in *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir.1993), supports plaintiffs' position. In *Herrmann*, the Second Circuit addressed claims for delinquent contributions and an attempt to hold the employer's president and sole shareholder liable for the debts. The district court had dismissed the case on several grounds. On appeal, the Second Circuit held first that plaintiffs had alleged colorable claims under ERISA sufficient to invoke the court's subject matter jurisdiction. 9 F.3d at 1055–56, relying on 29 U.S.C. § 1451(a)(1) (authorizing civil action to enforce obligations under multiemployer plan). The court concluded that "the federal courts have subject matter jurisdiction over 'any party under this subtitle' if that party's act or omission adversely affects, among others, any plan participants." *Id.* at 1056.

Turning to the issue of personal jurisdiction, the Second Circuit said: "Having stated a colorable claim against defendants under [ERISA's Multiemployer Pension Plan Amendments Act] MPPAA, the district court has personal jurisdiction over the defendants insofar as the MPPAA includes a provision for nationwide service of process. See 29 U.S.C. § 1451(d) (1988)." 9 F.3d at 1056; see also *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997) (following *Herrmann* on this point as applied to nationwide service of process under civil RICO: "We adopt the same approach and conclude that insofar as an asserted federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision.").[4]

This court has an obligation to give "most respectful consideration" to the decisions of the courts of appeals outside the Seventh Circuit and to follow them whenever it can. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987); accord, *United States v. Glaser*, 14 F.3d

---

4. In *Republic of Panama*, however, the Eleventh Circuit went on to hold that the Fifth Amendment's Due Process Clause required the court to evaluate the fairness and reason-ableness of forcing a defendant to respond to a particular lawsuit in a particular district court. See 119 F.3d at 945–48.

1213, 1216 (7th Cir.1994). The court has tried to give such consideration here. On the point that is critical point to this case, however, the Second Circuit did not explain or elaborate on its conclusion. Moreover, *Herrmann* did not present or consider the issue in terms of a default judgment and the ability of a defendant to contest the basis upon which personal jurisdiction had been exercised. The court therefore respectfully declines to follow *Herrmann.*

If ERISA were construed as plaintiffs argue here—(a) to give rise to a federal cause of action against persons associated with employers who acted as "alter egos" of employers who established or signed employee benefit plans; (b) to authorize nationwide service of process on such persons; and (c) to foreclose such persons from challenging the alter ego foundation of a default judgment obtained against them in a distant court—serious questions of due process of law under the Fifth Amendment would arise. Those constitutional questions and more general considerations of fairness to defendants who never agreed to ERISA's nationwide service of process weigh in favor of construing the statute so as to permit the defendants to litigate the jurisdictional facts here.

■ This court is aware of the general rule that a defendant's contacts with the United States as a whole, rather than with the forum state, may satisfy the Fifth Amendment's Due Process Clause for claims arising under federal law. See generally, *e.g., United Rope Distributors, Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir.1991); *Fitzsimmons v. Barton,* 589 F.2d 330, 332–34 (7th Cir. 1979). With respect to claims for which a federal statute authorizes nationwide service, the federal courts and scholars have conducted a vigorous debate, however, as to whether considerations of fairness to defendants may also come into play in deciding whether more substantial contacts with the forum state or district are needed to comply with the requirements of due process of law. The topic receives extended treatment in 4 Wright & Miller,

Federal Practice and Procedure § 1067.1 (2d ed.1987); see also, *e.g., Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389–91 & n. 2 (8th Cir.1991) (in federal question case, analyzing minimum contacts with forum state to test fairness of exercise of jurisdiction under Fifth Amendment's due process clause); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir.1975) (same).

In deciding questions of personal jurisdiction in ERISA cases, a number of courts have evaluated defendants' contacts with the forum state, as distinct from contacts with the United States. See, *e.g., Varsic v. United States District Court for the Central District of California,* 607 F.2d 245, 249–50 (9th Cir.1979) (analyzing defendant plan's contacts with forum state under state due process test to evaluate venue decision); *Burkhart v. Medserv Corp.,* 916 F.Supp. 919, 922–23 (W.D.Ark. 1996) (dismissing ERISA claim for lack of personal jurisdiction because defendant lacked minimum contacts with forum state); *Chemtech Industries v. Goldman Financial Group, Inc.,* 156 F.R.D. 181, 183–84 (E.D.Mo.1994) (same); *Willingway Hospital, Inc. v. Blue Cross and Blue Shield of Ohio,* 870 F.Supp. 1102, 1107–11 (S.D.Ga.1994) (dismissing ERISA claim for lack of personal jurisdiction; applying tests of fairness and minimum contacts with forum state); *Doe v. Connors,* 796 F.Supp. 214, 219–21 (W.D.Va.1992) (analyzing defendant's contacts with state under due process test to evaluate personal jurisdiction); *Cannon v. Gardner–Martin Asphalt Corp. Retirement Trust—Profit Sharing Plan,* 699 F.Supp. 265, 266–68 (M.D.Fla.1988) (same); *Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829, 831–32 (E.D.Tex.1987) (venue tested based on defendant plan's due process contacts with forum state); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan,* 517 F.Supp. 627, 632–33 (S.D.W.Va.1981) (same); *Ballinger v. Perkins,* 515 F.Supp. 673, 676 (W.D.Va.1981) (same); *Turner v. CF&I Steel Corp.,* 510 F.Supp. 537, 542–43 (E.D.Pa.1981) (same).

Representing the opposite point of view, another case involving some of the plaintiffs in this case, *Board of Trustees, Sheet Metal Workers' National Pension Fund v. McD Metals, Inc.*, 964 F.Supp. 1040 (E.D.Va.1997), applied the national contacts test to deny an employer's motion to dismiss ERISA claims for lack of personal jurisdiction. The court provided an extensive collection of authorities on both sides of the question and concluded that the "overwhelming weight of authority" is contrary to use of fairness tests, such as that adopted in *Willingway Hospital.* See 964 F.Supp. at 1044–46. Another extensive review of the competing viewpoints is set forth in *BankAtlantic v. Coast to Coast Contractors, Inc.*, 947 F.Supp. 480, 488–90 (S.D.Fla.1996), which applied the national contacts test to a civil RICO claim, where the statute also provides for nationwide service of process.

This court need not take sides in the debate over the broad constitutional issue, especially with respect to what is only one alternative ground for resolving this case. Suffice it to say for the present that the constitutional test may require attention to the particulars of the case, including the parties, the particular statutes in question, and the specific types of claims in the case. See generally *Republic of Panama*, 119 F.3d at 945–48 (applying test and finding no Fifth Amendment violation by requiring "large corporations providing banking services to customers in major metropolitan areas along the eastern seaboard" to defend themselves in Florida, especially where litigation would involve worldwide discovery). Considerations may differ, for example, as between federal interpleader claims, bankruptcy cases, securities fraud cases, civil RICO cases, and ERISA cases seeking to collect delinquent contributions of modest amounts from distant defendants of limited means.

The narrower question this court faces is whether ERISA should be construed to bar a collateral challenge to personal jurisdiction in these circumstances, where the defendants are not parties to the employee benefit plan and have no ties to the forum state other than their alleged alter ego status, and where a default judgment was obtained on the basis of bare allegations on "information and belief." The court concludes that ERISA should be construed to permit such defendants one opportunity to litigate the factual and legal grounds for treating them as ERISA defendants in the first place, but without providing an opportunity to relitigate the merits of the underlying debts owed by Elite Erectors, the employer who is directly liable for the delinquent plan contributions.

This approach to the ERISA statute is akin to the approach taken by the Supreme Court in *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). There the Court addressed the venue provisions in 28 U.S.C. § 1391(e) for civil actions against federal officers and employees for actions undertaken in their official capacities or under color of legal authority. The statute appeared to provide plaintiffs in such cases with a wide choice of venue and with nationwide service of process. In one of the consolidated cases before the Court, the district court had dismissed for lack of personal jurisdiction the individual capacity claims against former federal officials who had no ties to the District of Columbia, where one defendant resided. See 444 U.S. at 530–31, 100 S.Ct. 774. The court of appeals had reversed on the theory that minimum contacts with the forum state/district were not required. *Id.* at 532, 100 S.Ct. 774. In the other case before the Court, a court of appeals had held that former federal officials who held their official positions when suits were filed against them could be required to defend themselves in individual capacity lawsuits in a district with which they had no ties, and that minimum contacts analysis did not apply. *Id.* at 532–33, 100 S.Ct. 774.

The Supreme Court did not decide the constitutional due process question, whether former federal officials could be required to defend themselves in federal lawsuits in distant forums with which they had

no minimum contacts. Instead, the Court resolved the case as a matter of statutory construction. Although the broad language of § 1391(e) could easily apply to such cases, the Court concluded it was unlikely that Congress "intended to impose on those serving their Government the burden of defending personal damages actions in a variety of districts after leaving office." *Id.* at 545, 100 S.Ct. 774. The Court explained further:

> Absent a clear indication that Congress intended such a sweeping effect, we will not infer such a purpose nor will we interpret a statute to effect that result. "We think these laws ought to be construed in the spirit in which they were made—that is, as founded in justice—and should not be strained by technical constructions to reach cases which Congress evidently could not have contemplated, without departing from the principle upon which they were legislating, and going far beyond the object they intended to accomplish." *Brown v. Duchesne,* [60 U.S. (19 How.) 183, 197, 15 L.Ed. 595 (1857) ].

444 U.S. at 545, 100 S.Ct. 774.

A similar approach is appropriate here. ERISA was written to eliminate technical procedural obstacles to enforcement of important obligations to employees and their families. As noted above, an employer who establishes or agrees to a plan may reasonably be deemed to have consented to nationwide service of process. That burden goes with the ERISA territory. The question is very different, however, when a plan seeks to collect a debt from a person who did not establish or agree to the plan and who did not agree to guaranty the employer's obligation. To the extent claims against such persons might be deemed to arise under ERISA at all, as distinct from state law, such persons should be entitled to one opportunity to litigate the legal and factual issues essential to subjecting them to nationwide service of process. In light of the constitutional debate and considerations of fairness, bare allegations, especially on "information and belief," should

not be sufficient to establish jurisdiction over such defendants in the absence of much clearer indications from Congress that it intended to reach the limit, or perhaps beyond the limit, of constitutional due process of law.

### Conclusion

Plaintiffs' claims against defendants Skylight Consultants and Mary Lowry were not subject under ERISA to nationwide service of process because the claims arose under state law, not under ERISA. In the alternative, even if the claims were properly deemed to arise under ERISA, these defendants were entitled to one fair opportunity to litigate the legal and factual foundations for treating them as proper defendants under ERISA. When these defendants exercised that opportunity in this court, they showed there is no legal or factual basis for holding them liable for Elite Erectors' obligations to the plaintiffs. Accordingly, plaintiffs' motion to alter or amend the court's judgment of February 9, 1999, is hereby denied.